JOHN PETERSEN, PETITIONER-RESPONDENT, v. FOUNDA-
TION CO., RESPONDENT-PROSECUTOR.

Submitted January 20, 1942—Decided March 19, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Walter X. Trumbull*.

For the respondent, *Hans M. K. Hansen* (*Russell Fleming*, of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. The basic question is whether the employee was improperly awarded compensation in excess of the maximum number of weekly payments to which he was entitled. *N. J. S. A.* 34:15-16 and 34:15-12 (b).

The facts are free from substantial dispute.

On August 1st, 1924, John Petersen, employee, was doing carpenter work, at the rate of $9 a day, for Foundation Co., employer, on the Victory Bridge, located over the Raritan River, between South Amboy and Perth Amboy, New Jersey. While so engaged, he suffered an accident which concededly arose out of and in the course of his employment. He was struck by a very heavy "concrete bucket" which was used on the job to "fill in casings." The results of the blow were that his right shoulder was injured, one of his ribs was injured, and his left femur was fractured.

Petersen was promptly taken to the Perth Amboy Hospital, where he remained a few days short of two years. While there, he was obliged to and did undergo several operations. From the Perth Amboy Hospital he went to other hospitals in our state and in New York, where he continued to undergo many more operations. Between the day of the accident (August 1st, 1924) and the day (August 9th, 1940) when further treatment was denied to him, he had undergone, in all, twenty-one operations. Osteomyelitis had set in and despite all surgery and medical treatment, and other care, it steadily became worse. Consequently, at the time of the last hearing in the Bureau, on December 12th, 1940, the wound was still draining.

Without attempting minutely to describe the nature of the operations or the resultant disabilities flowing therefrom, it will suffice if we mark the facts that the employee was not able to work, and he has lost some thirty pounds. As the result of the absorption of pus, his kidneys and his "arterial system" have become affected, and other portions of his body have broken down. Perhaps his condition can best be summarized by quoting the concluding sentence of one physician's

testimony, with which all other physicians substantially concur, namely, "As a result [of his chronic infection] he shows cardiac involvement, arterial involvement with a high blood pressure, he shows degenerative disease of the kidneys and is without question totally disabled. The osteomyelitis still carries on."

It is conceded that at the time of final hearing (December 12th, 1940) the employee had received compensation for 300 weeks for temporary disability (*N. J. S. A.* 34:15-12 (a)) and compensation for 105 weeks for permanent disability for "60% loss of the left leg." The question was: for how much longer was the employee entitled to compensation?

The Bureau held, that since the employee suffered a disability "total in character and permanent in quality," and since because of such disability it was impossible for him to "obtain wages," he was entitled to reparative compensation within the exception to *N. J. S. A.* 34:15-16, namely, *N. J. S. A.* 34:15-12 (b).

Pursuant to that holding, the Bureau determined that the employer should pay the employee compensation for 500 weeks (*N. J. S. A.* 34:15-16) representing both temporary and permanent disability and that the employer should be credited with the 405 weeks for which payments had already been made for it to the employee. The Bureau further held that the 300 weeks temporary disability (*N. J. S. A.* 34:15-12 (a)) expired on May 1st, 1930, inclusive; that the 105 weeks expired on May 5th, 1932, inclusive; and the 95 weeks expired on March 1st, 1934, inclusive.

A judgment was entered accordingly in the Bureau, on March 6th, 1941, by which the employer was ordered to pay for the 95 weeks from May 6th, 1932, to March 1st, 1934, inclusive; the employer was further ordered to pay the employee for 366 weeks from March 2d, 1934, to March 6th, 1941, inclusive, all at the rate of $17 a week (the applicable maximum rate (chapter 49, *Pamph. L.* 1923, *p.* 101), and further ordered that the employer continue to make payments to the employee at the rate of $17 a week "subject to such periodic reconsiderations and extensions as the case may require." *N. J. S. A.* 34:15-12 (b).

On appeal to the Middlesex County Court of Common Pleas, the judgment of the Bureau was affirmed. Employer was allowed a writ of *certiorari*.

For the employer it is argued here, as it was below, (1) that the lower tribunals were "without authority or power" to make an "order for compensation" in excess of a period of 500 weeks, *N. J. S. A.* 34:15-16; that no such order can be made on the "basis" of two-thirds of the employee's "earnings" but that any order for time in excess of 500 weeks must be "based" upon the "diminution of petitioner's earning capacity;" and (2) that even if the provisions of *N. J. S. A.* 34:15-16 are without application in the instant cause, nonetheless, the lower tribunals "erred in granting compensation for permanent disability for a period in excess of 400 weeks without proof that there had been a submission by (employee) for rehabilitation to the Rehabilitation Commission (*N. J. S. A.* 34:16-1, *et seq.*), and without evidence of any kind that the petitioner's earning capacity had been affected in any way."

*First:* It is conceded that the first contention can only be sustained upon the asserted theory that there can be no right—in logic or reason—to our holding that compensation may be awarded for temporary and permanent disability as the result of the same accident. There is no merit to this belated contention. Whatever the holding may be in other states, in our state, under our act, the right both to temporary (*N. J. S. A.* 34:15-12 (a)) and permanent disability (*N. J. S. A.* 34:15-12 (b)) as the result of a single accident, is a right too firmly established to justify question or debate. A like challenge made shortly after the passage of our Workmen's Compensation Act (chapter 95, *Pamph. L.* 1911, p. 134), was thoroughly exploded. *Nitram Co.* v. *Court of Common Pleas* (1913), 84 *N. J. L.* 243; 86 *Atl. Rep.* 435. Nor is that right lost when its exercise leads to a recovery which may, and in fact does, exceed the maximum recoverable for each disability separately but which recovery, as here, is not in excess of the maximum recoverable under *N. J. S. A.* 34:15-16 subject to the exception thereto. *N. J. S. A.*

34:15-12 (b). *Cf. Nilram Co.* v. *Court of Common Pleas, supra* (at *p.* 244).

*Second:* True the employee did not submit himself to physical or educational rehabilitation. But it is equally true that he had not been ordered by the Rehabilitation Commission so to do. *N. J. S. A.* 34:15-12 (b). The employee's submission, on his own accord, to the Rehabilitation Commission for rehabilitation, the existence of an order by the Rehabilitation Commission determining that because of the employee's disability it was impossible for him to obtain wages or earnings equal to those obtained by him before the accident, are not, as in effect urged, conditions precedent to the employee's right to reparative compensation under *N. J. S. A.* 34:15-12 (b). There are no such provisions in the statute. The employee's right to reparative compensation for his total disability did not cease after the expiration of the 400 week period unless it had been made to appear that he had rejected the rehabilitation ordered by the Rehabilitation Commission.

The powers, among others, to ascertain those susceptible of and entitled to rehabilitation in our state, to acquaint those so ascertained with the rehabilitation facilities provided, to arrange with hospital (public and private) for reports of all persons under treatment for injury or disease that may permanently impair their earning capacity, *to arrange with the Commissioner of Labor for reports of all injuries received by employees in the course of their employment which may result in permanent disability"* (italics supplied), are the powers exclusively those of the Rehabilitation Commission. These are some of the means which the legislature has given the Commission with which to carry out the policy of the state to "fit for remunerative occupation physically handicapped persons." When these means are used, persons injured or otherwise physically handicapped become known to the Commission. Such persons must then promptly be visited by a representative of the Commission who reports back to the Commission, which then determines not whether the person has become totally physically disabled—that is determined by the tribunals under our Workmen's Compensation

Law—but rather "whether the person is susceptible of rehabilitation." *N. J. S. A.* 34:16-8. For a comprehensive consideration of this wholesome and beneficial legislation (Rehabilitation) and for a like consideration of the precise point involved (failure of employee, on his own accord, to submit to·rehabilitation) see the opinion of Chief Justice Brogan, for this court, in the case of *Lukis* v. *Armour & Co.,* 125 *N. J. L.* 92; 13 *Atl. Rep.* (2d) 660, which case we hold to be dispositive of the employer's second contention.

*Third:* Nor do we see any merit to the suggestion that the employee unduly delayed bringing on this cause for final hearing. It is sufficient answer to observe that this point was not raised below, and, therefore, cannot be raised here for the first time. As already stated the delay was without objection. Either party was given the right to re-list the cause if either desired so to do. Not having exercised its known right, the employer cannot now be heard to complain.

In fine, we too, find, as did the lower tribunals, that the employee, as a result of the accident, suffered "disability total in character and permanent in quality," that he could not and did not do any work or earn any wages, and additionally, we find that the employee is presently unfit for rehabilitation. The award was, therefore, proper.

The writ is dismissed, with costs.