James L. KEEHN, Appellant,

v.

ALASKA INDUSTRIAL BOARD, Bellingham Canning Co., and D. K. MacDonald & Co., Appellees.

No. 14699.

United States Court of Appeals Ninth Circuit.

Jan. 25, 1956.

Denman, Chief Judge, dissented.

William L. Paul, Jr., Seattle, Wash., for appellant.

Faulkner, Banfield & Boochever, Juneau, Alaska, J. Gerald Williams, Atty. Gen., Territory of Alaska, for appellees.

Before DENMAN, Chief Judge, HEALY, Circuit Judge, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This case involves a compromise and settlement of a claim for an industrial injury under Sec. 43–3–6, A.C.L.A.1949, awarding a lump sum for partial permanent disability and a subsequent attempt to thereafter claim further temporary disability.

Keehn, appellant herein, and applicant before the Alaska Industrial Board, claimed injury on August 20, 1952, from lifting mattresses while employed by the Bellingham Canning Company. Bel-

lingham's insurance carriers made temporary payments to Keehn in the sum of $2,264.00; and supplied medical and hospital attention, including a fusion operation on the back, amounting to $3,987.00. In May 1953, the doctor reported Keehn's condition as fixed, no further treatment indicated that he was fit for work; that there was a permanent partial disability "equivalent to 40% of the back" and recommended the claim be closed with such an award.

A compromise and release was signed by the parties and approved by the Alaska Industrial Board on June 25, 1953, describing the disability as "40% disability of the back" and settling "any and all claims" on account of the injury by the payment to Keehn of $2,880.00 in a lump sum "for permanent partial disability," in addition to the sums previously paid.

In May 1953, Keehn went to work for another employer on a boat, had further trouble with his back, and in September 1953 another fusion operation was performed by the Public Health Service. The doctor's report indicates no herniation of a vertebral disc was found, but that the previous spinal fusion had not been successful.

The application indicates two questions were presented to the Board: (1) "temporary disability compensation for a period ending May 31, 1953, should have been at the rate of $10.00 instead of $8.00 per day." (2) "Symptoms became worse after May 31, 1953, instead of better as applicant had anticipated, and further temporary compensation is due."

The application recites that in September 1953 the fusion was performed, that Keehn anticipated disability for approximately six months, and that the operation and disability grew out of the original injury. The Company, by answer before the Board, denied the temporary disability and alleged that Keehn sustained a serious injury prior to employment with Bellingham Canning Company; alleged that despite the fact that Keehn's claim against Bellingham was highly questionable, the compromise had been entered into with the approval of the Board; that the applicant had recovered $5000 and maintenance expenses from the original injury prior to employment with Bellingham; that Keehn had sustained other prior injuries, two of them involving the back.

The Board found and decided that "there was no showing that the aggravation caused by the second injury" (Aug. 1952) "exceeds 40% permanent partial disability for which compensation was paid under the compromise and release dated June 25, 1953" and denied the application. The matter was then brought before the district court alleging the Board's decision was erroneous as a matter of law.

The trial court found that while working for a different employer, Keehn had sustained serious injury in 1951, involving back disability; recited the amounts paid by Bellingham's insurance carrier totaling $9,131.00 growing out of the August 1952 injury; recited the finding and award of the Board; concluded there was substantial evidence upon which the Board based its decision, and affirmed. Within time the matter was brought here on appeal.

Sec. 43–3–6, A.C.L.A.1949 provides in part, " * * * the employer and the employee * * * shall have the right to reach an agreement in regard to any claim *for injury* * * * in accordance with the schedule hereof, but a memorandum of the agreement, in a form prescribed by the Industrial Board, shall be filed with the Board, * * *. If approved by the Board, such agreement shall be enforceable the same as any order or award of the Board, *and subject only to modification in accordance with the provisions of Section 4 hereof"*, Sec. 43–3–4, A.C.L.A.1949.

The Alaska Industrial Board is authorized under Sec. 43–3–4, A.C.L.A. 1949 to make rules for carrying out procedure under the Act and Art. 17(a) of its Rules of Practice and Procedure

714

in Disputed Claims issued pursuant thereto, reads as follows:—"Agreements which provide for the payment of less than the full amount of compensation due or to become due, and which undertake to release the employer from all future liability, will be approved only where it appears that a reasonable doubt exists as to the rights of the parties or that approval would be for the best interest of the parties."

Sec. 43-3-4, A.C.L.A.1949 provides, "If an injured employee (is) entitled to compensation under any subdivision or part of this schedule, and it shall afterwards develop that he or she is or was entitled to a higher rate of compensation under same or some other part of subdivision of this schedule, then and in that event he or she shall receive such higher rate, after first deducting the amount that has already been paid him or her. To that end the Industrial Board is hereby given and granted continuing jurisdiction of every claim, and said Board may, at any time and upon its own motion or on application, review any agreement, award, decision or order, and, on such review, may make an order or award ending, diminishing or increasing the compensation previously awarded, ordered, or agreed to, subject to the maximum or minimum provided in this Act. No such review shall affect such award, order or settlement as regards any moneys already paid, except that an award or order increasing the compensation rate may be made effective from date of injury, and except that if any part of the compensation due or to become due is unpaid an award or order decreasing the compensation rate may be made effective from the date of injury, and any payments made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such methods as may be determined by the Industrial Board; provided, however, that no compensation under such increased rate shall be paid unless the disability entitling the employee thereto

shall develop and claim be presented within three (3) years after the injury."

### The Trial Court Findings

No question was raised before the district court or here, about the difference in rate between $8.00 and $10.00. The sole question raised is the claim of Keehn to further temporary disability.

The district court findings are not artful. It found that while working for a different employer before employment with Bellingham, Keehn had sustained a serious injury in 1951, involving back disability, and it found that the Board denied Keehn's application for the reason that there was no showing that the aggravation caused by the second injury (Aug. 1952) exceeds 40% permanent partial disability, for which compensation had been paid under the compromise and release. Inferentially the finding was that there was no disability attributable to the injury occurring while Keehn was working for Bellingham, which exceeded 40% and that any disability presently suffered which might exceed such amount, was the result of previous injury.

We think the judgment should be affirmed on the ground that there was substantial evidence before the district court for such findings. The alternative would be to send it back to the district court for more direct and detailed findings. In view of the record, this would undoubtedly be an idle act, since we think the court clearly indicated the basis for its decision.

There were ample facts to support the findings and conclusions. Keehn suffered injuries to his back in 1949 in lifting, while employed by Kodiak Fisheries. He suffered injury in November 1951 while working for another employer. The diagnosis made following that injury referred in part to "restriction of motion and compression irritation of peripheral nerves * * * resulting in peripheral motor and sensory nerve symptoms and signs, particularly in right femoral and sciatic distribu-

tion." This is the classic description of low back disability and often of herniation of a disc. The record is extremely sketchy as to the alleged injury while Keehn was employed by Bellingham.

With liability doubtful, the insurance carrier for Bellingham nevertheless paid temporary disability payments, supplied treatment, an operation and made a lump sum settlement, all at a cost of $9,131.-00. The finding of 40% permanent disability, was ample to cover a serious back case.

The Question of an Increase of Compensation for an Increased or Aggravated Permanent Disability Is Not Before Us.

Hilty v. Fairbanks Exploration Co., 9 Cir., 1936, 82 F.2d 77, involved Sec. 4 of the Act, Comp.Laws Alaska 1933, Sec. 2164, which with amendments became Sec. 43–3–4, A.C.L.A.1949. For the purposes of our problem, the sections are substantially the same. The court said, "By this section progressive injuries and disabilities are expressly provided", 82 F.2d at page 79.

If our case involved a claim for an increased or aggravated permanent disability, now *contended* to exceed 40%, the case would be helpful. But Keehn disclaims any such contention; as he must because of the express finding by the Board and the court that the aggravation does not exceed the 40% approved in the settlement. Keehn disclaims any effects by Sec. 4 to increase the permanent disability award so approved. He states, "insofar as permanent disability compensation is concerned, the Alaska Act is a lump sum

Act, and once the sum is paid there is nothing more to do to end it or diminish it."

We do not reach a question as to what would be the result if it were determined on the facts, that by aggravation the rate of permanent partial disability should now be higher than the rate allowed by the compromise and settlement, or the impact of Sec. 4 in such an instance. We can conceive of situations which might well raise the problem, e. g. an applicant is awarded 40% permanent partial disability for a head injury and then goes insane as a result of the original injury. There the further disability would not have been within the contemplation of the parties to the settlement or of the Board. We do not need to pass on the meaning of Sec. 4 as applied to such a situation.

Temporary Disability Compensation after Approval and Payment of a Lump Sum for Permanent Partial Disability.

Keehn suggests that the language of Sec. 4 refers to ending, diminishing or increasing *temporary* disability compensation. Hilty v. Fairbanks Exploration Co., supra, does not assist as to whether a total temporary disability may be compensated after a settlement award for a partial permanent disability.

Whether further *temporary disability* compensation may be allowed while applicant is receiving compensation for a partial permanent disability, or has received a lump sum by award or approved settlement therefor, presents a serious question, and one on which we have been able to find little authority.[1]

1. The fact that we find little or nothing on this problem, indicates from our reading of many compensation cases, that the ordinary question usually arises on a contention that the original permanent disability has been aggravated or increased, and under the "new or further disability" or the "changed conditions" provisions of Workmen's Compensation statutes, claim is ordinarily made for an increased permanent disability rating or award. We find nothing on this question in the numerous A.L.R. annotations on various phases of Workmen's Compensation. See: 165 A.L.R. 9, (Workmen's Compensation; Review, etc.) at 37 (lump awards—reopening); 105 A.L.R. 971, (Aggravation of injuries); 72 A.L.R. 1125 (New and further disability) 88 A.L.R. 385. (Right to compensation for temporary total disability in addition to compensation for permanent partial disability).

The problem would appear more difficult in the lump sum situations, than in the cases where an applicant was receiving periodic payments for a permanent partial disability. In the latter case, there would be some opportunity to make a comparison between what was being received as compensation for the permanent partial disability and what might be received for the claimed temporary disability compensation. There seems to be a general rule under most of the workmen's compensation statutes that in similar situations, although not this identical one, the applicant is entitled only to the greater amount. But where a lump sum award has been made and paid, the basis of this comparison is not available.

■ As a matter of logic, we have trouble with the question of an amount of *temporary disability* compensation following the approval and payment of a lump sum award for a *permanent partial disability* where there has been a finding that the percentage of permanent partial disability has not increased. The very fixing of a rate for a permanent partial disability indicates that the applicant will permanently thereafter suffer disability. Certainly this would include within its terms temporary disability from time to time, and the approval and payment of the lump sum award would appear to terminate claims for further temporary disability. To hold otherwise would lead to absurd situations, e. g. "A" receives a permanent partial disability award for the loss of a leg. Periodically the stump becomes irritated and he cannot work for a month or so. During this time he is clearly temporarily and totally disabled. It would seem logical that the permanent award contemplated such

happenings and no further awards should be granted for temporary disability, whether total or partial.

Again as a matter of logic, it would seem an applicant should first apply to reopen an award or approved settlement on the ground of an aggravation or increased disability and if this application was granted, the case would then be in posture to seek temporary disability compensation, pending decision on claim for an increased award.

We think the case was properly disposed of by the decision of the Board and court below in its inferential finding that any present disability suffered by Keehn resulted from the prior accident. We therefore need not now decide the question and save it for another day and another case.

The judgment is affirmed.

DENMAN, Chief Judge (dissenting).

The court is clearly in error in construing Section 43–3–4, A.C.L.A., as preventing Keehn's recovery for a temporary disability arising from a succeeding operation on his back on September 12, 1953,[1] after a settlement on June 25, 1953, on the amount of a prior temporary disability from a prior operation on his back and of his permanent partial disability. The pertinent portion of that section is:

"If an injured employee (is) entitled to compensation under any subdivision or part of this schedule, and it shall afterwards develop that he * * * is or was entitled to a higher rate of compensation under same or some other part of [or] subdivision of this schedule, then and in that event he * * * shall receive such higher rate, after first

---

1. The agreed statement of facts (Tr. 30, 31) states: "Dr. Gray then performed a Laminectomy with no relief from pain. On January 26, 1953, a spinal fusion was done by Dr. Gray. This also afforded no relief from pain for the patient.

*Three months ago another spinal fusion was done in Portland, Oregon.*"
"Physical Examination: The patient is a pale, perspiring, chronically ill, white male, weighing 158 lbs. stripped. (Usual weight is 170 lbs.) His blood pressure is 120/70." [Emphasis supplied.]

deducting the amount that has already been paid him * * *."

The Supreme Court has repeatedly held that such statutes shall be liberally construed in favor of the injured workman.[2] Construing the words "rate" in Section 43-3-4 liberally in favor of the employee we find that Webster's dictionary gives as the synonyms of the noun "rate" the words "amount" and "quantity". The Board, therefore, has jurisdiction to determine whether the second temporary disability arose from Keehn's employment since the statute means that the Board so should act "if it afterwards develop that he or she is or was entitled to a higher *amount* of compensation."

It is therefore clear that if Keehn suffered a succeeding temporary disability he may recover an increased amount for his total temporary disabilities, from which shall be deducted "the amount that has already been paid him", for his prior partial disability.

Instead of considering the temporary disability after the September, 1953 back operation the Board declined so to act and instead in effect held that it had no such power in its finding:

"there was no showing that the aggravation caused by the second injury exceeds forty percent permanent partial disability for which compensation was paid under the Compromise and Release dated June 25, 1952 * * *."

The court's opinion, with which I disagree, that it is most unlikely that if the matter were sent back to the Alaska Industrial Board it would be likely to come to a different conclusion is entirely irrelevant. The important thing that the opinion establishes for the Alaska law is a contention highly adverse to the rights of injured workmen.

The judgment should be reversed and the case remanded to the Alaska Industrial Board to determine whether the temporary disability after the operation of September 12, 1953, was caused by happenings in Keehn's employment with the Bellingham Canning Company, or as suggested, but not found by the Board, from other injuries prior to his employment.

2. See, e. g., Industrial Commission of Wisconsin v. McCartin, 1947, 330 U.S. 622, 628, 67 S.Ct. 886, 91 L.Ed. 1140; Baltimore & Philadelphia Steamboat Co. v. Norton, 1932, 284 U.S. 408, 414, 52 S. Ct. 187, 76 L.Ed. 366; Old Dominion Stevedoring Corp. v. O'Hearne, 4 Cir., 1955, 218 F.2d 651; Robinson v. Bradshaw, 1953, 92 U.S.App.D.C. 216, 206 F.2d 435.