245 F.2d 855
 ALASKA INDUSTRIAL BOARD, and Carl E. Jenkins, Appellants,
v.
CHUGACH ELECTRIC ASSOCIATION, Inc., a corporation and General Accident, Fire and Life Assurance Corporation, Ltd., a corporation, Appellees.
 No. 14616.
 United States Court of Appeals Ninth Circuit.
 April 29, 1957.
 Rehearing Denied June 7, 1957.
 
 COPYRIGHT MATERIAL OMITTED J. Gerald Williams, Atty. Gen. of Alaska, John H. Dimond, Juneau, Alaska, for appellants.
 Robertson, Monagle & Eastaugh, Juneau, Alaska, for appellees.
 Before DENMAN, Chief Judge, and STEPHENS, HEALY, POPE, LEMMON, FEE, CHAMBERS, BARNES, and HAMLEY, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 In this case, which arises under the Workmen's Compensation Act of Alaska, two questions are presented on appeal. The first of these is whether, under the circumstances of this case, the Alaska Industrial Board had jurisdiction to reopen a previously-rejected claim for a temporary total disability award. The second is whether, if the board had such jurisdiction, it correctly granted such an award for injuries arising from the same accident in which a lump-sum award for permanent total disability had previously been granted.
 
 
 2
 The following facts, essential to a consideration of these questions, are not in dispute. On September 21, 1950, Carl E. Jenkins received serious injuries when he came into contact with a high voltage electric line while in the course of his employment. His employer was Chugach Electric Association, which had insured its liability under the act with General Accident Fire & Life Assurance Corporation.
 
 
 3
 As a result of the accident, it was necessary to amputate Jenkins' left arm near the shoulder, his right leg below the knee, and four toes of his left foot. These amputations were made in a series of three surgical operations, the last of which was performed on October 28, 1950. The left foot failed to heal and was still under treatment at the time of his doctor's last report, on December 17, 1953.
 
 
 4
 Following this injury, his employer and the insurance company began paying Jenkins compensation for temporary total disability, under the "Temporary Disability" provision of Alaska Comp.Laws Ann., § 43-3-1 (1949). This compensation was paid at the rate of $95.34 per week, for approximately thirty-eight weeks.
 
 
 5
 On July 25, 1951, the employer and the insurance company reversed their position. They decided that Jenkins had been permanently and totally disabled since October 28, 1950, when the last amputation (the right leg) occurred. Accordingly, they granted him a lump sum of $8,100, as a permanent total disability award, but deducted from it the $3,645 which had been paid to Jenkins as temporary total disability. A check in the sum of $4,455 was sent to Jenkins on July 25, 1951, for the purpose of closing the claim.
 
 
 6
 On August 14, 1951, Jenkins filed with the board, on its printed form, an application for adjustment of claim. The evident purpose of this application was to claim continuing benefits for temporary disability, despite the allowance of a lump-sum award for permanent total disability.[1] It was so treated by the employer and insurance company, which filed a joint answer denying that temporary disability continued.
 
 
 7
 It was also so treated by the chairman of the board, who, on November 12, 1952, filed a decision granting the application. It was held in this decision that temporary disability had continued since October 28, 1950. Jenkins was awarded the $3,645 which had been deducted from his lump-sum payment, and continuing temporary disability payments "until a medical end result is reached."
 
 
 8
 On February 6, 1953, after review by the full membership of the board, the two members other than the chairman filed a decision vacating the chairman's decision and award of November 12, 1952. It was held that, Jenkins' condition having been rated as a total permanent disability on October 28, 1950, "no compensation for total temporary disability is thereafter payable." He was, however, granted a temporary total disability award of $476.70, representing compensation for a period of thirty-five days prior to the operation on October 28, 1950. Jenkins did not seek a district court review of this award, as he might have done under Alaska Comp.Laws Ann., § 43-3-22 (1949).
 
 
 9
 On May 14, 1953, Jenkins wrote to the chairman of the board, requesting a copy of the decision of February 6, 1953. On November 10, 1953, Jenkins' attorney wrote to the board, requesting that the claim be reopened. On November 21, 1953, Jenkins filed an application for adjustment of claim. He there stated that he was entitled to temporary disability until there was an end to disability through medical means. The employer and the insurance company answered contending that the decision of February 6, 1953, was res judicata, and that the board was without jurisdiction to reopen the claim.
 
 
 10
 The board, on January 8, 1954, filed a decision reversing its action of February 6, 1953, holding that a condition of temporary total disability existed on and after October 29, 1950, "no end medical result having been reached." The employer and the insurance company thereupon instituted this action to set aside the board's decision.
 
 
 11
 In granting judgment for plaintiffs, the district court held that the board was without jurisdiction to reopen the claim following its decision of February 6, 1953, from which no appeal was taken. Alternatively, it was held that an award for temporary total disability may not be granted for physical disability arising from the same accident in which an award for total permanent disability has been granted.
 
 
 12
 We will first consider the jurisdictional question which is presented.
 
 
 13
 The power and duty of the board with respect to the modification of compensation awards is governed by Alaska Comp. Laws Ann., § 43-3-4 (1949), quoted in the margin.[2]
 
 
 14
 Appellees contend that Jenkins did not file a claim, within the meaning of the proviso at the end of § 43-3-4, prior to the expiration of the three-year period specified in that proviso. In this connection, it is pointed out that certain medical reports relied upon by appellants as constituting such a claim were dated prior to the hearing resulting in the decision and award of February 6, 1953. It is further argued that Jenkins' letter of May 14, 1953, does not constitute a claim or seek a rehearing. The letter of November 10, 1953, which his counsel filed with the board, and Jenkins' application for adjustment of claim, filed November 21, 1953, were not filed within three years of the injury, which occurred on September 21, 1950.
 
 
 15
 Appellees' argument is apparently based upon the premise that, in order to constitute a "claim" within the meaning of the proviso to § 43-3-4, the document must be filed subsequent to the decision establishing the lower rate of compensation. If this premise is correct, we would agree with appellees that such a claim has not been filed within the statutory three-year period. The letter of May 14, 1953, constituting the only document filed subsequent to the decision and prior to the expiration of the three-year period, was a mere inquiry, and not a claim.
 
 
 16
 But we find nothing in the statutory language warranting the view that, to constitute a "claim" under this proviso, the document must be filed subsequent to the decision establishing the lower rate of compensation. The "claim" referred to in the proviso is not intended to serve the purpose of an application for rehearing. Under § 43-3-4, no such application need be filed, since the board is expressly authorized to review a prior decision "upon its own motion."
 
 
 17
 All that the "claim" need contain is a request for an increased rate of compensation over that presently in effect. Jenkins' application of August 14, 1951, amended on December 10, 1951, contained such a request. It was so treated by the employer and insurer in their answer, by the chairman in his decision of November 12, 1952, and by the board in its decision of February 6, 1953. Both the original and amended applications were filed within three years after the injury.
 
 
 18
 It is of no consequence that the board may actually have reopened the matter in response to Jenkins' insufficient letter of May 14, 1953, or his tardy claims of November 10 and 21, 1953. Since the board had power to reopen the matter on its own motion, and since it did desire to reopen, the action taken is to be deemed a reopening on the board's own motion.
 
 
 19
 We hold that Jenkins filed a timely claim for increased compensation, within the meaning of the proviso of § 43-3-4.
 
 
 20
 Appellees further contend that the board's reviewing power under § 43-3-4 is limited solely to the adjustment of the rate of compensation where there is a change in the physical condition of the claimant within three years of the original injury. Appellees argue, and we agree, that the temporary total disability award here in question is not for a changed physical condition, but for a physical condition which has existed since the accident.
 
 
 21
 Appellees' contention that there must have been a change in the physical condition of the claimant since the prior award is supported by a decision of the same trial judge, in Suryan v. Alaska Industrial Board, 12 Alaska 571.
 
 
 22
 We agree that § 43-3-4 provides a method whereby the board may reconsider a previous decision, for the purpose of awarding increased compensation to cover adverse changes in physical condition subsequent to a prior award.[3] We find nothing in § 43-3-4, or elsewhere in the act, however, which limits the power to reopen to cases involving changed physical condition. The words "and it shall afterwards develop" are broad enough to include not only changes in physical condition, but the disclosure of errors of law in connection with the award.[4]
 
 
 23
 The immediately-following words, "that he or she is or was entitled to a higher rate [emphasis added]," add substance to this construction. The word "was" indicates that the period during which a claimant may be entitled to increased compensation includes the time between the injury and the earlier award. This negatives the idea that increased compensation must relate to changed physical condition since the prior award.
 
 
 24
 It is true that, in § 43-3-1 and in the proviso at the end of § 43-3-4, the word "develop" is used to indicate progression of physical disability. But this is because the word is there used in juxtaposition with the words "injury" or "disability." These word combinations do not appear in the body of § 43-3-4, the language being "and it shall afterwards develop."
 
 
 25
 Appellees next argue that the board's decision of February 6, 1953, is conclusive and binding because no court proceedings to contest the decision were instituted within thirty days, as provided by § 43-3-22.
 
 
 26
 Under § 43-3-22, the award is conclusive and binding "as to all questions of fact," unless tested in a court proceeding commenced within thirty days. The award for temporary total disability here in question involves no reconsideration of factual questions. It was known at the time of the prior award that Jenkins' physical condition had not been stabilized. The granting, on reconsideration, of his claim for temporary total disability was not based upon a redetermination of facts, but upon a different view of the meaning of the statute. We need not now decide whether, despite § 43-3-22, the board is authorized, under § 43-3-4, to redetermine questions of fact.
 
 
 27
 Appellees' final argument on the question of jurisdiction is that § 43-3-29, requiring claims to be filed within two years after the injury, barred the reopening of the claim. But, as before shown, the claim for increased compensation was filed on August 14, 1951, and amended on December 10, 1951, which dates are well within the two-year period. Hence, we need not decide whether the two-year period specified in § 43-3-29 governs in the case of reconsiderations, in view of the three-year limitation specified in the proviso to § 43-3-4.[5]
 
 
 28
 We conclude that the board acted within its jurisdiction and power in reopening this claim for the purpose of further considering Jenkins' request for an award covering temporary total disability.
 
 
 29
 This brings us to the second principal question presented on this appeal. Where injuries, sufficient in themselves to constitute total and permanent disability, are the basis of the maximum award for such disability, may an allowance nevertheless be thereafter made for temporary disability based on the failure to heal of an additional injury concurrently sustained?
 
 
 30
 The pertinent statutory provisions to be examined are the two paragraphs of Alaska Comp.Laws Ann., § 43-3-1 (1949), quoted in the margin.[6]
 
 
 31
 Appellants' contention that a workman may receive benefit payments for "temporary" disability after he has been awarded a lump-sum payment for total and "permanent" disability resulting from injuries received in the same accident seems to involve a contradiction in terms. Appellants seek to avoid this apparent contradiction by segregating the injuries arising from a single accident. Thus, if, after finding some injuries sufficient to meet the statutory definition of "total and permanent disability," there are enough left over, when separately considered, to meet the statutory definition of "temporary disability," appellants believe the workman is entitled to both awards.
 
 
 32
 This reasoning might be permissible if we were concerned with permanent and temporary "injuries," as that word is used in the statute, rather than "disabilities," as that word is used in the statute. One may have a permanently injured arm and a temporarily injured leg. But if, by reason of certain injuries, a workman is, under the statute, totally and permanently disabled from doing any work, it follows that there is, in legislative contemplation, no remaining ability to work which can be affected, either permanently or temporarily, by other injuries received in the same accident.
 
 
 33
 Appellants argue that the statutory schedule of payments for "total and permanent disability" represents mere arbitrary indemnities, not necessarily associated with loss of earning power. They contend that temporary disability compensation, on the other hand, is directly and solely related to loss of earning power, and thus is compensation for loss of wages during the healing period. Hence, appellants assert, there is no inconsistency in allowing payments for temporary disability after an award has been made for total and permanent disability.
 
 
 34
 The basic principle of all workmen's compensation laws is that benefits relate to loss of earning capacity and not to physical injury as such. In the case of the loss of certain members, total and permanent loss of earning power is conclusively presumed for the purpose of awarding compensation under the act.[7] The individual receiving such an award may actually be able to continue some work, and hence be, in fact, not totally and permanently disabled. But the fact that some ability to work remains is not to be taken into account in determining whether such an individual is entitled to the lump-sum award.
 
 
 35
 We think it must logically follow that this conclusive presumption cuts both ways. In fixing the compensation for certain injuries, defined in the act as constituting total and permanent disability, sustained in an accident, actual remaining ability to work is to be disregarded for all purposes — those which are favorable to the workman as well as those which are unfavorable. Under the presumption, whatever the facts may be, there is no remaining ability to work, and therefore no foundation for temporary disability benefits. There is likewise no foundation for an additional partial disability award which, under appellant's theory, would otherwise be available if it became necessary to amputate Jenkins' left foot. The award for total permanent disability resulting from loss of members is thus intended as a maximum award for disability resulting from injuries received in an accident.
 
 
 36
 Appellants call attention to the second sentence of the quoted paragraph relating to temporary disability. It is there provided that, in all cases "where the injury develops or proves to be such" as to entitle the employee to compensation under some provision of the schedule "relating to cases other than temporary disability," the amount so paid or due him under the temporary disability schedule shall be in addition to the amount to which the employee shall be entitled under such other or permanent disability schedule. Cases of permanent injury are "cases other than temporary disability," within the meaning of this statute. Libby, McNeill & Libby v. Alaska Industrial Board and Lathourakis, 9 Cir., 191 F.2d 262, certiorari denied 1952, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683.[8]
 
 
 37
 As applied to the facts of this case, the sentence just noted does not authorize the payment of benefits for temporary disability after the workman has been found to have a permanent total disability. It means only that a lump-sum award for permanent total disability shall be in addition to any benefits theretofore paid or due for temporary disability. If an injury which causes "temporary" disability thereafter develops or proves to be a "total" disability, it is no longer a "temporary" disability.[9]
 
 
 38
 The district court was therefore correct in holding that, after the disability was determined to be total and permanent, Jenkins was no longer entitled to monthly benefits for temporary disability.
 
 
 39
 In view of the ruling just stated, we feel constrained to discuss one more aspect of this case. The determination that Jenkins' disability was total and permanent was made by the board in July, 1951. The board, however, attempted to relate back this determination of his status to October 28, 1950, when the second member was amputated. The board took this action under the mistaken view that any payment for temporary disability was improper. The result was that there was deducted from Jenkins' $8,100 award for permanent total disability the thirty-eight weekly payments he had received as temporary disability payments since the October date. As before indicated, the total sum so deducted was $3,645, leaving Jenkins but $4,455 of his lump-sum award. This action was confirmed by the board's decision of February 6, 1953, except that an award of $476.70 was made for temporary disability benefits due prior to October 28, 1950.
 
 
 40
 In our view, the temporary disability payments should not have been deducted from the lump sum to which Jenkins became entitled by virtue of being permanently and totally disabled. We say this notwithstanding the established fact that the loss of members warranting a classification of total and permanent disability unquestionably occurred on October 28, 1950.
 
 
 41
 Our opinion on this point is governed by the paragraph of § 43-3-1 which relates to temporary disability. It is there provided that when the injury develops or proves to be such as to entitle the employee to compensation under some other provision of the schedule (in this case, the provision relating to total and permanent disability), the amount so paid or due him under the temporary disability schedule shall be in addition to the amount to which he shall be entitled under such other or permanent disability schedule.
 
 
 42
 We have heretofore interpreted the words "and it shall afterwards develop", as used in § 43-3-4, to include not only changes in physical condition, but also the disclosure of errors of law in interpreting the statute. Section 43-3-1, now under consideration, uses these same quoted words plus the words "or proves." The added words do not, in our view, affect the meaning to be attributed to this provision. We therefore construe this provision of § 43-3-1 in the same way the similar provision in § 43-3-4 has been construed.
 
 
 43
 Until July 25, 1951, when the employer and the insurance company reclassified appellant as totally and permanently disabled, he was entitled to receive the temporary benefits which were being paid to him, because he was then classified as temporarily disabled. It follows that, under the paragraph of § 43-3-1 to which reference has been made, the lump-sum payment awarded on July 25, 1951, should not have been reduced by the sum Jenkins had received, or there was then due him, as a temporary disability award.[10]
 
 
 44
 There is good reason for this statutory requirement. Benefits for temporary disability are determined as a percentage of average daily wages, and are paid at the time compensation is customarily paid for labor performed at the employer's plant. See § 43-3-1. Such benefits, therefore, are considered as income, and are normally treated and expended as such by workmen covered by the act. Lump-sum payments for permanent total disability, on the other hand, are intended to represent capitalization of future earnings.
 
 
 45
 Hence, if a workman should rely upon the classification of a disability as temporary and treat payments so received as income, the deduction of those payments from his award for permanent disability would leave the injured workman with a sum much less than what the legislature intended as a capitalization of his future earnings.
 
 
 46
 We accordingly hold that the lump-sum payment of $8,100 should be in addition to the $3,645 paid for temporary disability on and after October 28, 1950, and in addition to the $476.70 award overdue for temporary disability prior to October 28, 1950.
 
 
 47
 This deduction question was not presented in the trial court and was not argued in the briefs. It was dealt with to some extent during oral argument. Normally, we would not consider and determine a question not presented in the trial court and in briefs. This case, however, has been pending for more than five years, thus rendering a remand undesirable. The point under discussion is a matter of public interest in connection with the administration of an important act having wide application. We have therefore considered it appropriate to depart from our usual practice, noted above, so that the case can finally be disposed of on the basis of this opinion.
 
 
 48
 The judgment is modified in accordance with the views expressed in this opinion, and in all other respects is affirmed.
 
 
 
 Notes:
 
 
 [1]
 An amended application was filed on December 10, 1951, correcting the figures originally given for total compensation received
 
 
 [2]
 Alaska Comp.Laws Ann., § 43-3-4 (1949):
 "Modification of compensation: Continuing jurisdiction: Effect of review upon moneys already paid: Limitation of time. If an injured employee [is] entitled to compensation under any subdivision or part of this schedule, and it shall afterwards develop that he or she is or was entitled to a higher rate of compensation under same or some other part of subdivision of this schedule, then and in that event he or she shall receive such higher rate, after first deducting the amount that has already been paid him or her. To that end the Industrial Board is hereby given and granted continuing jurisdiction of every claim, and said Board may, at any time and upon its own motion or on application, review any agreement, award, decision or order, and, on such review, may make an order or award ending, diminishing or increasing the compensation previously awarded, ordered, or agreed to, subject to the maximum or minimum provided in this Act. No such review shall affect such award, order or settlement as regards any moneys already paid, except that an award or order increasing the compensation rate may be made effective from date of injury, and except that if any part of the compensation due or to become due is unpaid an award or order decreasing the compensation rate may be made effective from the date of injury, and any payments made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such methods as may be determined by the Industrial Board; provided, however, that no compensation under such increased rate shall be paid unless the disability entitling the employee thereto shall develop and claim be presented within three (3) years after the injury."
 
 
 [3]
 We so held in Hilty v. Fairbanks Exploration Co., 9 Cir., 82 F.2d 77, and Keehn v. Alaska Industrial Board, 9 Cir., 230 F.2d 712
 
 
 [4]
 These words may also be broad enough to include the disclosure of errors of fact. However, in view of § 43-3-22, making a prior award conclusive and binding "as to all questions of fact," unless court proceedings are instituted within thirty days, it is uncertain (and we do not decide) whether the board may reopen a claim for the purpose of reconsidering questions of fact
 
 
 [5]
 An additional jurisdictional question has suggested itself to us. Under § 43-3-4, the board is given authority to reopen claims for the purpose of increasing or decreasing the "rate of compensation." It may be that, in a strict sense, the granting of a temporary total disability award to one who has already received a permanent total disability award, is not an increasing of the "rate of compensation" of the original award. This question, however, was not discussed in the briefs or oral argument, and the answer is not so plain as to warrant us in dealing with it sua sponte
 
 
 [6]
 The paragraphs of § 43-3-1 in question read:
 "[Temporary disability.] For all injuries causing temporary disability, the employer shall pay to the employee, during the period of such disability, sixty-five per centum (65%) of his daily average wages. And in all cases where the injury develops or proves to be such as to entitle the employee to compensation under some provision in this schedule, relating to cases other than temporary disability, the amount so paid or due him shall be in addition to the amount to which he shall be entitled under such provision in this schedule.
 "Payment for such temporary disability shall be made at the time compensation is customarily paid for labor performed or services rendered at the plant or establishment of the employer liable therefor and not less than once a month in any event."
 "[Loss of members as total permanent disability.] The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, or hearing in both ears, shall constitute total and permanent disability and be compensated according to the provisions of this Act with reference to total and permanent disability."
 
 
 [7]
 See 2 Larson, Workmen's Compensation (1952 ed.) § 58.10
 
 
 [8]
 Lathourakis was allowed and paid $2,005 for temporary disability suffered prior to his condition becoming fixed into permanent disability. He then received a lumpsum award of $3,600 for fifty per cent permanent disability, and payments for temporary disability thereupon ceased
 
 
 [9]
 Keehn v. Alaska Industrial Board, note 3, supra
 
 
 [10]
 Libby, McNeill & Libby v. Alaska Industrial Board and Lathourakis, supra. It was there pointed out that the prior 1929 act did require the amount paid for temporary disability to be deducted from the award under other provisions of the act. This was changed when the present language was enacted in 1946
 The provisions of § 43-3-4 providing for the deduction of amounts already paid, and providing that a new award may be made effective from date of injury, relate to cases wherein a "higher rate of compensation" is awarded. When the employer and the insurance company decided to reclassify appellant as totally and permanently disabled, they were not awarding him a higher rate of compensation.
 
 
 
 49
 DENMAN, Chief Judge (dissenting).
 
 
 50
 I dissent from the majority opinion's harsh and unjust conclusion resulting from its failure to apply to the relationship between the statutory provisions for total permanent and total temporary disability, the same liberal rule of interpretation of the Supreme Court and this court,[1] that the majority opinion does in considering the statute's time limitations.
 
 
 51
 It is obvious and admitted by the majority opinion that an employee's loss of two limbs, here a hand and a foot, does not create his total disability to work. There are many employments for a person with one good hand who can walk with an artificial leg or for one who has two good hands and a wheel chair.
 
 
 52
 Hence the statement of the statute that such loss "shall constitute total and permanent disability and be compensated according to the provisions of this act with reference to total and permanent disability" can well be construed liberally as providing no more than that one having such an injury shall receive a certain amount of money in any event. Since such a liberal construction would leave to the injured man after the amputation the right to claim compensation for the actual continuing temporary disability from the infections in his left foot, we are required to make it.
 
 
 53
 The statute provides for payment from the employer for "all injuries causing temporary disability".[2]
 
 
 54
 If this provision covers all temporary disabilities from a single industrial accident, the narrow and strict construction of the majority which reads "all" to mean all injuries except those accompanied by a loss of two limbs, etc., distorts the statutory language by depriving the word "all" of its plain meaning in violation of long established principles of statutory construction.[3]
 
 
 55
 The court's narrow construction leads to a most anomalous result. Under the opinion's rationale, a man like Jenkins who loses two limbs in or shortly after an accident is entitled to total permanent compensation immediately ($8,100),[4] but receives nothing thereafter during a long period of hospitalization which may last for several years. On the other hand, a worker who has both legs crushed in an accident (his injury being less serious initially), and is hospitalized for several years while physicians fight to save his legs, gets temporary disability as long as he is in the hospital until a medical end result is reached. This may amount to many thousands of dollars (65% of his weekly pay). If at the end of that time amputation is found necessary, he then receives the total permanent disability lump sum payment in addition. Thus although the end result in each case is the same, the man whose injury was apparently less severe initially gets more compensation. And if the man whose legs were merely crushed did not have to have them eventually amputated, he still could receive more compensation than one in Jenkins' position if his period of temporary disability was long enough.[5]
 
 
 56
 Nothing in the statute compels this result. In fact the second sentence of the provision of Section 43-3-1 defining temporary disability suggests that permanent and temporary disability payments may both be payable at the same time for one injury, and nothing therein restricts this result to cases where the workman becomes entitled first to temporary disability and thereafter to permanent disability.[6] In my view the argument of the opinion based on the distinction between "injuries" and "disabilities" ignores the realities of the situation and relies on semantics. Such semantical refinements are not sufficient to support the harsh and unreasonable construction of the statute which leads to the conclusion that one who is less severely injured (and suffers less disability) may receive more compensation than one who is more seriously disabled. The words of the Supreme Court in Baltimore & Philadelphia Steamboat Co. v. Norton, 1932, 284 U.S. 408, 413, 52 S.Ct. 187, 188, 76 L.Ed. 366, appear pertinent:
 
 
 57
 "It may not reasonably be assumed that Congress intended to require payment of more compensation for a lesser disability than for a greater one including the lesser. Nothing less than compelling language would justify such a construction of the act."
 
 
 58
 The temporary disability provisions of the Alaska statute are typical of those of most other jurisdictions in this country. In the absence of a clear statutory mandate to the contrary, the Alaska statute should be construed, as have those of other jurisdictions, as providing temporary disability compensation during the healing period until a medical end result is reached.[7]
 
 
 59
 There is nothing contrary to this in this court's opinion in Keehn v. Alaska Industrial Board, 9 Cir., 1956, 230 F.2d 712. There the physicians had determined that a medical end result had been reached, a 40% permanent disability award had been made and "A compromise and release was signed by the parties." 230 F.2d at page 713. Here no such result had been reached and no compromise settlement made, and we are concerned with the initial healing period prior to the occurrence of a medical end result.
 
 
 60
 It appears to me that the statement of the majority opinion that "in the case of the loss of certain members, total and permanent loss of earning power is conclusively presumed for the purpose of awarding compensation under the act"[8] which, the opinion asserts, is supported by Larson, has no such support as applied to the issue presented in this case. This conclusive presumption is applied, as Larson's text shows, to prevent the deduction of any wages actually earned by a worker who is totally and permanently disabled within the meaning of a workmen's compensation statute from his total permanent disability award.[9] Nothing in the text supports the majority's statement that "this conclusive presumption cuts both ways" and therefore that it must be applied to reduce the injured workman's compensation.[10] So applied, the presumption defeats the purpose which it was created to serve (i. e., to maximize the recovery of the injured man), and as applied to the present facts, results in a construction of the statute which violates the principle of the Norton case, supra.
 
 
 61
 It is significant that under other workmen's compensation statutes which closely resemble the Alaska statute in their provisions for the determination of permanent and temporary disability, a large number of cases have held that where "the effects of the loss of a member extend to other parts of the body * * * the schedule allowance for the lost member is not exclusive."[11] These cases are but another illustration of the liberal rule of construction in workmen's compensation cases.[12] Since temporary disability compensation covers the healing period,[13] it appears to me that a fortiori the same rule of construction requires us to hold that where the failure of an amputation to heal has inflicted upon the workman a temporary disability in fact far greater than the loss of the limb itself he is entitled to total temporary disability compensation until the healing of the amputation is completed.
 
 
 62
 Instead of the liberal treatment to which this unfortunate man and his family are entitled the majority is leaving him unpaid for the long period of actual total disability admittedly arising from the electric burning in his employer's service, and a most harmful rule of construction is established for this circuit.
 
 
 
 Notes:
 
 
 [1]
 Voris v. Eikel, 1953, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5; Baltimore & Philadelphia Steamboat Co. v. Norton, 1932, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366; Libby, McNeill & Libby v. Alaska Industrial Board, 9 Cir., 1951, 191 F.2d 262, 264
 
 
 [2]
 The pertinent portion of Section 43-3-1 reads as follows:
 "(Temporary disability.) For all injuries causing temporary disability, the employer shall pay to the employee, during the period of such disability, sixty-five per centum (65%) of his daily average wages. And in all cases where the injury develops or proves to be such as to entitle the employee to compensation under some provision in this schedule, relating to cases other than temporary disability, the amount so paid or due him shall be in addition to the amount to which he shall be entitled under such provision in this schedule." [Emphasis added.]
 
 
 [3]
 Rice v. Minnesota & N. W. R. Co., 1861, 1 Black. 358, 379, 66 U.S. 358, 379, 17 L. Ed. 147 ("* * * it is not competent for this court to reject or disregard a material part of an act of Congress, unless it be so clearly repugnant to the residue of the act that the whole cannot stand together."); United States v. Raynor, 1938, 302 U.S. 540, 547, 58 S. Ct. 353, 356, 82 L.Ed. 413 ("A construction that creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the act, and will carry out the intention of Congress."); 2 Sutherland, Statutory Construction § 4705
 
 
 [4]
 The provision of the Alaska statute for a lump sum award for total permanent disability which is fixed in amount regardless of the injured man's previous wage rate is unique. All other workmen's compensation statutes in this country provide for periodic payments which in all jurisdictions except three vary in amount according to the workman's pay rate prior to his injury. See 2 Larson, Workmen's Compensation Law, App.B, Table 8, pp. 524-6 (1952), consisting of a comparison of the total permanent disability provisions of the workmen's compensation laws of 53 jurisdictions. Liberal interpretation of this unique statute requires that we not construe it to deprive the injured man of the temporary compensation which is based on his wage loss and limit him to a mere fixed sum unrelated to his loss of wages in the absence of a clear statutory mandate to that effect
 
 
 [5]
 At the rate of total temporary compensation to which Jenkins was entitled ($95.34 per week) the temporary compensation would exceed the total permanent lump sum payment ($8,100) after only 20 months of total temporary disability. According to the determination of the Board, Jenkins' total temporary disability continued more than three years after his injury
 
 
 [6]
 That sentence reads: "And in all cases where the injury develops or proves to be such as to entitle the employee to compensation under some provision in this schedule, relating to cases other than temporary disability, the amount so paid or due him shall be in addition to the amount to which he shall be entitled under such provision in this schedule."
 
 
 [7]
 See, e. g., McCall v. Potlatch Forests, 1949, 69 Idaho 410, 208 P.2d 799, 801; Shell Oil Co. v. Industrial Commission, 1954, 2 Ill.2d 590, 119 N.E.2d 224, 230; Gorman v. Atlantic Gulf & Pacific Co., 1940, 178 Md. 71, 12 A.2d 525; Laurel Daily Leader v. James, Miss.1955, 80 So. 2d 770, 773; Fallis v. Vogel, 1940, 137 Neb. 598, 290 N.W. 461; Petersen v. Foundation Co., 1942, 128 N.J.L. 234, 25 A.2d 1; Peerless Sales Co. v. Industrial Commission, Utah 1944, 154 P.2d 644; Johnson v. Cox, Ala.App.1955, 82 So. 2d 562
 
 
 [8]
 Majority opinion, 245 F.2d 861
 
 
 [9]
 2 Larson, Workmen's Compensation Law § 58.10, p. 42 (1952). See e. g., Great American Indemnity Co. v. Segal, 5 Cir., 1956, 229 F.2d 845, where the court, in affirming a total disability award and disallowing a deduction for wages earned by the disabled worker, quoted a Texas decision, Davies v. Texas Employers' Ass'n, Tex.Com.App., 29 S.W.2d 987, as follows:
 "[T]otal incapacity does not mean utter inability to do any work at all, but that a man's disability is total, within [the meaning of the statute], when he can no longer `secure and hold employment for physical labor' such as he had to do to make a living prior to his injury." 229 F.2d at page 846.
 
 
 [10]
 Majority opinion, 245 F.2d 861
 
 
 [11]
 Larson, op. cit. supra note 9, § 58.20, p. 44, cases cited note 38
 
 
 [12]
 Larson, op. cit. supra note 11, p. 45. The text writer suggests that "destruction of the most favorable remedy should not be read into the act by implication." Ibid. In contrast to other workmen's compensation statutes, the provision of the Alaska Act for temporary disability compensation is more adequate than its permanent disability compensation provisions (note 4 supra). Hence the above quoted principle here strongly supports affirmance of the Board's decision
 
 
 [13]
 Note 7, supra
 
 
 
 63
 POPE, Circuit Judge (dissenting).
 
 
 64
 What Judge Denman has pointed out in his footnote, 4, namely, that the lumpsum payment under the Alaska statute is in no way related to the wage scale of the injured workman, has convinced me that it is not proper to apply here what the majority opinion calls a "basic principle of all workmen's compensation", that is, that "benefits relate to loss of earning capacity and not to physical injury as such." My difficulty is in seeing how we can read a "basic principle" into a statute like this one which bears evidence of having been drawn on a very different theory.
 
 
 65
 The majority opinion says: "One may have a permanently injured arm and a temporarily injured leg." Just as self-evident is the proposition that one may have a permanently injured arm and leg and a temporarily injured leg, or he may lose an arm and a leg and have a temporarily injured leg. That is this case.
 
 
 66
 The opinion further says: "The individual receiving such an award [i. e., for loss of an arm and a leg] may actually be able to continue some work." I have not been able to find in the statute anything which says that if that ability to continue to do some work is temporarily impaired by injury of the remaining leg, he shall receive no compensation for that distinct temporary disability.
 
 
 67
 The majority opinion appears to get away from that by asserting the existence of a conclusive presumption that "cuts both ways". According to the opinion it "cuts both ways" so that although the person receiving the lump sum award may "actually be able to continue some work" yet he is conclusively presumed not to be able to do what he is "actually" able to do. The opinion arrives at this conclusive presumption that "cuts both ways" by extending the presumption discussed by Larson (see footnote 7) in a manner for which the cases cited by Larson furnish no authority. Those cases indulge the conclusive presumption for the protection of the workman and to prevent him from losing his total permanent disability award. I think the Alaska statute does not warrant creating a presumption that cuts the other way and minimizes the compensation which the workman might otherwise claim.
 
 
 68
 It is a universally accepted rule relating to workmen's compensation laws that they should be liberally construed in favor of the injured workman. When I know it is a fact, as the majority opinion concedes, that a workman who has lost an arm and a leg may actually be able to continue some work and that such work may for the time being be prevented by what the opinion calls a "temporarily injured leg", I cannot be persuaded that I should create a new double-edged presumption that what I thus know to be possible is a matter of law impossible.
 
 
 69
 I am persuaded that if we would not import into this unique statute any "basic principle" or "conclusive presumption" not actually found in the act itself, and would just take this statute by its four corners and apply the usual liberal construction in favor of the injured workman, we would have to find that it provides that the fixed award for certain specified injuries was not intended to bar further compensation for the temporary loss of such earning power as remained after the injury.
 
 
 70
 With Judge Denman I think the judgment should be reversed.