MUNICIPALITY OF ANCHORAGE,
Petitioner,

v.

Alan LEIGH, Respondent.

No. S–4076.

Supreme Court of Alaska.

Jan. 3, 1992.

Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Anchorage, for petitioner.

Chancy Croft, Debra Fitzgerald, Michael J. Jensen, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### INTRODUCTION

Alan Leigh's temporary total disability benefits were terminated pursuant to AS 23.30.185 and the definition of "medical

stability" in Alaska's Workers' Compensation Act. On appeal, the superior court held that the Act's definition violated substantive due process. Subsequently, we granted a Petition for Review filed by Leigh's employer, the Municipality of Anchorage.

FACTS AND PROCEEDINGS

The facts are not in dispute. Alan Leigh is a paramedic with the Anchorage Fire Department. He injured his back on October 28, 1988. His employer accepted his claim and paid him temporary total disability ("TTD") compensation until January 25, 1989.[1]

Prior to termination of his benefits, the insurance adjuster wrote to Dr. Thomas Vasileff, Leigh's treating physician, asking if Leigh was "medically stable" as defined by AS 23.30.265(21).[2] Dr. Vasileff responded by letter on January 25, 1989, stating "[a]ccording to the definition of medical stability posed in your letter, [the employee] falls into your parameters of being medically stable." At a later deposition, Dr. Vasileff testified that he would prefer to use a definition of "medical stability" taken from the AMA *Guides to the Evaluation of Permanent Impairment ("Guide")*.[3] Under that definition, he thought Leigh would not be stable for a period of six months to a year. He testi-

fied that Leigh's condition could reasonably be expected to improve over time, although he did not anticipate objectively measurable improvement.

Leigh applied for TTD compensation. The Board, applying the statutory definition of medical stability, decided on October 10, 1989 that Leigh was medically stable as of January 25, 1989 and denied his claim. It stated,

> The question is what "clear and convincing evidence" must be adduced [to overcome the presumption of medical stability]. We do not believe the presumption may be rebutted by redefining the phrase "medical stability." We believe that AS 23.30.265(21) demands evidence that further objectively measurable improvement resulting from additional medical care or treatment may be reasonably expected despite the 45–day absence of objectively measurable improvement which triggered the presumption.

Leigh appealed to the superior court, arguing that the legislature violated substantive due process by changing the definition of medical stability from the AMA definition to its own definition.[4] The superior court, agreeing with Leigh, reasoned as follows:

1. AS 23.30.185 provides,

 **Compensation for temporary total disability.** In case of disability total in character but temporary in quality, 80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the disability. Temporary total disability benefits may not be paid for any period of disability occurring after the date of medical stability.

2. AS 23.30.265(21) reads as follows:

 "[M]edical stability" means the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment, notwithstanding the possible need for additional medical care or the possibility of improvement or deterioration resulting from the passage of time; medical stability shall be presumed in the absence of objectively measurable improvement for a period of 45 days; this presumption may be rebutted by clear and convincing evidence.

3. While the AMA *Guide* does not contain a definition *per se* of medical stability, the preface to this work states the following:

 > In general, it is not possible for a physician, using medical information alone, to make reliable predictions about the ability of an individual to perform tasks or to meet functional demands. A physician can determine, however, whether or not a particular medical condition has become permanent because it is static or well-stabilized. *When it is stable, there is no medical reason to expect that the individual will gain or lose future functional ability.* When functional ability is assessed by a standardized nonmedical procedure in a vocational rehabilitation facility or in an occupational setting, the physician may have confidence in the determination.

 American Medical Association, *Guides to the Evaluation of Permanent Impairment*, at x (2d ed. 1984).

4. Article I, Section 7 of the Alaska Constitution states, "No person shall be deprived of life, liberty or property without due process of law."

The legislation provides for a presumption of stability if no "objectively measurable improvement" has been made for 45 days. The legislation does not address the situation of no "objectively measurable improvement" for 45 days but deterioration in that time. It appears inconsistent for the injured worker to be removed from temporary total disability compensation when he has not only failed to improve but suffers deterioration. It also appears incongruous for medical concepts to be used in determining worker's compensation except for the termination of temporary total disability, e.g. AS 23.30.095 and 190. In addition, it is incongruous for the burden to be shifted to the injured worker by the presumption in AS 23.30.265(21) and to require that the worker prove by clear and convincing evidence the non-existence of "medical stability" in light of the presumption of compensability contained in AS 23.30.120.

The conflicting provisions of AS 23.30 set forth above and the objective purpose of the act as stated by the legislature make it clear that the definition of "medical stability" has no reasonable relationship to the purpose of the Workers' Compensation Act and that the challenged definition rests upon no rational policy.

The Municipality thereafter filed a Petition for Review, which was granted.[5]

The Municipality contends that AS 23.30.265(21) does not violate substantive due process. It argues that the legislature's definition is rational, is consistent with the AMA definition, does not conflict with the presumption of compensability, and that it is constitutional to declare a deteriorating employee medically stable. The Municipality also notes that the superior court's decision was essentially advisory in nature and based upon hypothetical facts.

Leigh argues that the definition of "medical stability" found in AS 23.30.265(21) is unconstitutional both on substantive due process and equal protection grounds. He argues that the definition is irrational because the remainder of the Act makes use of the AMA guidelines, it has no legitimate basis, it conflicts with the statutory presumption of continuing compensability, it inappropriately requires the employee to overcome the presumption of medical stability by a clear and convincing standard of proof, and it fails to distinguish between an injured worker who is improving and one who is worsening. Leigh also argues that apart from unconstitutionality, the court should declare the definition invalid as it creates "incongruous" results in light of the other provisions of the Act. Finally, he argues that the Board erred as a matter of fact in determining that Leigh did not furnish clear and convincing evidence that he was not medically stable, and that the Municipality is estopped from asserting that Leigh's argument is "hypothetical."

## DISCUSSION

There is no question that the legislature radically changed the workers' compensation statute. Prior to the 1988 amendments, the Act did not define temporary total disability. Yet, this court had consistently correlated entitlement to TTD benefits with loss of earning capacity.[6] Effec-

---

**5.** This court uses its independent judgment on questions of statutory interpretation that do not involve the Board's special expertise. *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544, 546 (Alaska 1987). Constitutional questions are also questions of law to which this court applies its independent judgment. *Sonneman v. Knight*, 790 P.2d 702, 704 (Alaska 1990). The court must adopt "the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**6.** *See Wein Air Alaska v. Kramer*, 807 P.2d 471, 474 (Alaska 1991) (citing *Hewing v. Peter Kiewit & Sons*, 586 P.2d 182, 185–86 (Alaska 1978)). In fact, in *Bignell v. Wise Mechanical Contractors*, 651 P.2d 1163, 1167 (Alaska 1982), we held that the Board may award TTD benefits to an employee with an unscheduled disability whose condition had stabilized medically, but who was pursuing an approved vocational rehabilitation program. And in *Bailey v. Litwin Corp.*, 713 P.2d 249, 253 (Alaska 1986), this court held that "medical stability" is irrelevant in determining cessation of TTD benefits if the employee has returned to work. *Bailey* held that the claimant's return to work was "sufficient evidence to rebut the presumption of continuing compensability for temporary total disability." *Bailey*, 713 P.2d at 254 (footnote omitted).

tive July 1, 1988, the legislature amended the Act so that TTD terminates after the date of medical stability. *See* AS 23.30.-185.[7]

Our analysis of Leigh's contentions starts with the presumption that the statute is constitutional. 2A *Sutherland Stat. Const.* § 45.11 (4th Ed.1984 Rev.). Moreover, "a court is not empowered to substitute its judgment for that of the legislature on matters of policy, nor to strike down a statute which is not manifestly unconstitutional even though the court may consider it unwise." 1 *Sutherland Stat.Const.* § 2.01 at 15–16 (4th Ed.1985 Rev.). Rather, the specific question raised by this petition is whether the statute's definition of medical stability, its burden of proof, and its presumption of medical stability are constitutional.

A. *Substantive Due Process and the Statutory Definition of Medical Stability*

In *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974) we said:

Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.

A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper. The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.

■ The legislature's intent in enacting AS 23.30.265(21) is clear. Section 1 of the 1988 amendments to the Act provides:

(a) It is the intent of the legislature that AS 23.30 be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a *reasonable cost* to the employers who are subject to the provisions of AS 23.30.[8]

Ch. 79, § 1, SLA 1988 (emphasis added). As noted above the legislature defined medical stability as follows:

"medical stability" means the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expect-

---

**7.** The legislature also directed that temporary partial disability terminate on medical stability. *See* AS 23.30.200. By virtue of these amendments the Act was aligned with the workers' compensation statutes of many other states. "Case law from other jurisdictions overwhelmingly reflects the view that medical stabilization, or maximum physical recovery, marks the end of temporary disability." *Bignell,* 651 P.2d at 1169 (Rabinowitz and Matthews, JJ., dissenting) (footnote omitted). Professor Larson notes that in most states temporary benefits cease when the "healing period" has ended and "stabilization" has occurred. 2 A. Larson, *The Law of Workmen's Compensation,* § 57.12 at 10–9 (1983) (cited in *Bailey v. Litwin Corp.,* 713 P.2d 249, 253 n. 11 (Alaska 1986)).

**8.** The legislature's desire to lower workers' compensation costs was reinforced by a letter of intent from the Senate included in the Senate Journal:

**8.** With an actuarial analysis concluding that this bill will provide a *two percent savings* in hard costs and an unquantifiable amount of soft dollar savings, it is the intent of the Alaska State Senate that, upon passage of this bill, the Division of Insurance request a new rate filing reflecting a reduction in workers' compensation premiums.
1988 Senate Journal 2420. A report of the Workers' Compensation Labor–Management Task Force also chronicled the increase in workers' compensation insurance costs. This Task Force was resurrected in 1986, following a rate increase by the Department of Workers' Compensation Insurance "with the purpose of reducing rates paid by employers through legislative changes to the Statute." (Workers' Compensation Labor–Management Task Force, Synopsis of Proposed Legislative Changes to Chapter 30 of Title 23, p. 1)

ed to result from additional medical care or treatment, notwithstanding the possible need for additional medical care or the possibility of improvement or deterioration resulting from the passage of time;

AS 23.30.265(21).

In our view this definition is rational. First, and most significantly, in its quest to lower costs and facilitate resolution of disputes, the legislature adopted a clear definition as to when medical stability is achieved for purposes of the Act. The AMA *Guides to the Evaluation of Permanent Impairment* contains no clear definition of medical stability. The definition Dr. Vasileff used from the AMA *Guide*, equating medical stability with the absence of "medical reason to expect ... gain or [loss of] future functional ability," comes from the *Guide's* preface.[9]

Even assuming the *Guide* contains a definition of medical stability inconsistent with the statute, the legislature chose not to adopt it. The legislature appears to have explicitly rejected TTD benefits for a worker whose condition deteriorates. The statute states that

"medical stability" means the date after which further objectively measurable improvement form the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment, *notwithstanding the possible need for additional medical care or the possibility of* improvement or *deteri-*

oration *resulting from the passage of time....*[10]

AS 23.30.265(21).

 In addition to this conflict with AMA guidelines, Leigh contends that the principal problem with AS 23.30.265(21) is that its definition of medical stability fails to take account of a claimant with a worsening condition. In response to this contention the superior court said:

The legislation provides for a presumption of stability if no "objectively measurable improvement" has been made for 45 days. The legislation does not address the situation of no "objectively measurable improvement" for 45 days but deterioration in that time. It appears inconsistent for the injured worker to be removed from temporary total disability compensation when he has not only failed to improve but suffers deterioration.

The Municipality, citing *Lien v. City of Ketchikan*, 383 P.2d 721, 724–25 (Alaska 1963), argues that a deteriorating claimant is a hypothetical concern which we should not consider. Contrary to Leigh's assertions, the facts in this petition only reveal that Leigh might improve over time, not that he was deteriorating. Since we do not know how the Board will construe AS 23.-30.265(21) in relation to a deteriorating claimant we decide the constitutionality of this statute as it applies to Leigh.[11]

Leigh also argues that the Municipality is "quasi estopped" from making this anti-

**9.** The term is not specifically defined in the *Guide's* glossary, nor is there any prolonged discussion of the term. In fact, contrary to the discussion in the preface, the AMA defines "permanent impairment" in the glossary as including deterioration.

Permanent impairment is impairment that has become static or well stabilized with or without medical treatment, *or that is not likely to remit despite medical treatment of the impairing condition.*
AMA, *Guides to the Evaluation of Permanent Impairment,* at 225. Hence, the definition in the *Guide* appears inconclusive as to whether deterioration is consistent with a permanent impairment determination, although the glossary indicates the two are consistent.

**10.** The legislature's awareness of the AMA *Guide* is evident from AS 23.30.190(b), where it man-

dates the *Guide's* use for determining the existence and degree of permanent impairment. Leigh further argues that it is inconsistent to use AMA *Guide* for the determination of PPI, yet not TTD. Leigh fears a time gap in benefits, but such is a hypothetical concern as Leigh received PPI when his TTD benefits terminated.

**11.** The United States Supreme Court summarized the rule well.

A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. A limited exception has been recognized for statutes that broadly prohibit speech protect-

hypothetical argument given its statement in its Petition for Review that an important constitutional question is involved. However, the Municipality never asserted that Leigh's condition was deteriorating. Rather, true to Dr. Vasileff's statements and the Board's decision, it stated that Leigh "was medically stable." In fact, the Municipality specifically argued in its petition that "The Lower Court's Decision was Advisory in Nature in That it was Based Upon Hypothetical Facts." Therefore, Leigh's quasi-estoppel argument lacks merit; the Municipality's position in its brief before this court is consistent with its position in its petition.[12]

B. *Substantive Due Process, The Statutory Presumption, and The Burden of Rebutting The Presumption*

Alaska Statute 23.30.265(21) reads in part that:

> medical stability shall be presumed in the absence of objectively measurable improvement for a period of 45 days; *this presumption may be rebutted by clear and convincing evidence....*

(Emphasis added.)

 The Municipality persuasively argues that it is neither constitutionally im-

permissible nor inconsistent for the legislature to shift the burden of proving lack of medical stability to the employee upon the happening of a particular event—such as the continued lack of improvement for 45 days. Concerning the alleged difficulty that this burden places on the employee the Municipality again persuasively asserts that:

> This evidence is easily obtained by examining the treating physician. That is, the treating physician should have no difficulty offering an opinion on whether or not further objectively measurable improvement is expected. The 45 day provision merely signals when that proof is necessary. The alleged difficulty in proving the nonexistence of medical stability, simply fades when viewed in light of the proof actually required.

Thus we reject Leigh's contention that the burden of proof provided for in AS 23.30.265(21) violates substantive due process.

The effect of this 1988 amendment is to restrict the application of the presumption provided for in AS 23.30.120.[13] Leigh has not provided us with any authority for the proposition that the legislature lacks the

---

ed by the First Amendment. This exception has been justified by the overriding interest in removing illegal deterrents to the exercise of the right of free speech. That justification, of course, has no application to a statute that enhances the legal risks associated with riding in vehicles containing dangerous weapons. *County Court of Ulster v. Allen,* 442 U.S. 140, 154–55, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) (citations omitted). However, the Court did go on to explain that in the case of a mandatory presumption in a criminal case (which is similar to the presumption in the case at bar), the Court examines its constitutional validity divorced from the facts at bar and bases it on the presumption's accuracy in the run of cases. *Id.* at 159, 99 S.Ct. at 2226.

**12.** We note that the Act provides other benefits when TTD benefits cease, e.g. permanent total disability benefits ("PTD"), AS 23.30.180, and permanent partial impairment benefits ("PPI"), AS 23.30.190. Here Leigh received PPI benefits when he was found medically stable and TTD benefits ceased. If the worker's condition deteriorates, the Board can later modify these other awards. AS 23.30.130. *See Alaska Indus. Bd. v. Chugach Elec. Ass'n,* 17 Alaska 183, 245 F.2d 855

(9th Cir.1957) (provision allows Board to increase compensation to cover adverse changes in physical condition subsequent to an award), *rev'd on other grounds,* 356 U.S. 320, 78 S.Ct. 735, 2 L.Ed.2d 795 (1958). Moreover, the Act does not limit medical benefits if continued treatment is needed. AS 23.30.095.

The Municipality argues that this result is consistent with maintenance and cure under general maritime law. The law has been summarized as follows:

> The obligation to pay maintenance and cure continues until the seaman is cured or, if there is permanent impairment, until he reaches the point of maximum medical recovery. The test for maximum medical recovery is "when it appears probable that further treatment will result in no betterment of the seaman's condition." In the case of permanent injury, maintenance and cure continues until the seaman's incapacity is diagnosed as being permanent.... The seaman may still institute a new proceeding if there is a later possibility of new curative treatment.

Schoenbaum, *Admiralty and Maritime Law* 161–62 (1987) (footnotes omitted).

**13.** Alaska Statute 23.30.120(a)(1) provides:

authority to narrow a presumption that it previously enacted.[14] We therefore reject Leigh's contention that the presumption of medical stability provided for by AS 23.30.-265(21) violates substantive due process.

### C. Conclusion

We hold that Leigh's substantive due process attack on the definition of medical stability articulated by AS 23.30.265(21), the presumption provided for in this statute, and the burden placed upon the employee to rebut this presumption should be rejected. Leigh has failed to meet his heavy burden of demonstrating that no rational basis exists for these three questioned components of AS 23.30.265(21). Given the legislature's explicit goal of insuring "the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers" who are subject to the Act, we conclude that AS 23.30.265(21) is not arbitrary since it bears a reasonable relationship to a legitimate, rational, governmental policy.[15]

**REVERSED.**

(a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
(1) the claim comes within the provisions of this chapter;

14. The Municipality points to AS 23.30.120(c) as an instance where the legislature restricted the scope of the presumption found in AS 23.30.-120(a)(1) for claims involving mental injury.

15. See *Taylor v. Southeast-Harrison Western Corp.*, 694 P.2d 1160, 1162 (Alaska 1985), where we noted that the legislature was required "to balance a multitude of complex factors, many of which involved competing interests" in enacting the Workers' Compensation Act.

Leigh also attacks the definition, presumption, and burden of proof provisions of AS 23.-30.265(21) on the basis that they are violative of equal protection. Essentially, Leigh argues that the statute arbitrarily distinguishes between injured workers who improve every 45 days and those who do not improve or whose condition worsens. Leigh's argument is based on the Alaska Constitution and overlaps substantially

with his claim that these provisions violate substantive due process.

In *Wilson v. Municipality of Anchorage*, 669 P.2d 569, 572 (Alaska 1983) we said:

In order for a classification to be valid under Alaska's equal protection test, it must be reasonable, not arbitrary, and must bear a fair and substantial relation to a legitimate governmental objective. Depending on the importance of the individual's interest involved, a greater or lesser burden will be placed on the state to show this fair and substantial relationship.

For the reasons stated in our discussion of Leigh's substantive due process claims we conclude that the definition of medical stability, the presumption, and the rebuttal burden of proof are not violative of equal protection.

Leigh also argues that the Board erred as a matter of fact in determining that Leigh failed to prove by clear and convincing evidence that he was not medically stable on January 25, 1989. This contention lacks merit. Most significantly, Dr. Vasileff himself said Leigh was medically stable using the statutory definition. Our review of the record indicates that the Board's agreement with this was not erroneous.