Geoffrey MATHIS, Appellant,

v.

Frank SAUSER, Individually and in his capacity as Director of Institutions; Larry Kincheloe, Individually and in his capacity as Superintendent, Spring Creek Correctional Center, Department of Corrections for the State of Alaska, Appellees.

No. S–6773.

Supreme Court of Alaska.

July 18, 1997.

Geoffrey Mathis, pro se, Seward.

John K. Bodick, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and CARPENETI, Justice Pro Tem.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

At issue in this appeal is a state prison policy which prevents inmates from possessing computer printers in their cells. Geoffrey Mathis, an inmate whose printer was seized by prison officials, filed a complaint alleging various constitutional challenges to the policy. The superior court granted summary judgment against Mathis. We reverse in part.

### II. FACTS AND PROCEEDINGS

In 1993, Mathis was a minimum custody inmate at Spring Creek Correctional Center (SCCC) in Seward. At that time, Frank Sauser was the Director of Institutions for all Alaska correctional facilities, and Larry Kincheloe was the Superintendent of SCCC.

In the fall of 1993, Kincheloe, in cooperation with Sauser and Department of Corrections (DOC) Deputy Director Allen Cooper, established a new Standard Operating Procedure (SOP) designed to restrict the personal property inmates are allowed to possess in their cells. The SOP specifically prohibits the ownership of computers, except for the laptop variety, as well as all printers, word processors, memory typewriters, modems, and scanners. A "grandfathered property" provision allows the continued possession of certain otherwise unauthorized computers, but no printers are permitted unless the Director of Institutions grants an exemption from the policy based on an individual determination of special need.[1]

The official rationale given by the State for the restrictive property scheme is as follows:

The DOC ... has significant interests in controlling the amount and nature of property prisoners possess in prison both for security and administrative reasons. The uncontroverted affidavit of Deputy Director Allen Cooper established that prisoner possession of computer equipment jeopardizes facility security. Prisoners can maintain secret files on their computers with information regarding escape plans, secret organizations, and addresses of staff members or victims. Printers allow the dissemination of such information to other prisoners.... Prisoners can also use their computers and printers to perpetrate new crimes of fraud, to contact victims of crime, or find new victims such as in the case of sex offenders.

Prisoners also use their computers and word processing equipment to produce and sell legal work which results in the disruption of the orderly operation of prison facilities.... Finally, prisoners have been utilizing computers to harass prison officials at Spring Creek with frivolous litigation and large amounts of paperwork. Computer generated form pleadings with a "fill in the blank" format are widespread and facilitate the filing of meritless legal cases which results in the waste of significant staff time and state resources.

In August 1993, Sauser approved the new SOP for implementation at SCCC, and inmates were notified of the changed policy by memo. Soon after, Mathis filed a grievance protesting the impending seizure of his printer. He alleged that the anticipated action violated his constitutional rights and, in particular, denied him access to courts.

The DOC investigating officer concluded that the SOP was valid[2] and therefore denied Mathis's grievance. Kincheloe concurred with the investigating officer's determination. Mathis appealed his grievance to Director Sauser, asserting that his printer should have been "grandfathered" under the policy. Responding for Sauser, Deputy Director Cooper denied Mathis's appeal on the ground that the SOP does not allow any inmate to possess a printer in his cell.[3] On

---

1. The SOP was viewed as a model for a statewide policy which would apply to all DOC facilities.

2. The investigation report states: "Since Director Sauser has signed this SOP and it is done per policy, this investigator feels that no further action should be taken."

3. Deputy Director Cooper's denial of Mathis's appeal states that the DOC "has made available the equipment in the law library for your legal endeavors and has made available sufficient computers and printers in the education area for your educational needs." The equipment avail-

November 3, 1993, the policy went into effect, and Mathis's printer was seized.

After being notified of the SOP, Mathis filed a civil rights complaint against Sauser and Kincheloe as well as a motion for a preliminary injunction to prevent implementation of the policy directive. The superior court denied the motion for an injunction, and Mathis filed an amended complaint. In it, he alleged that the SOP was improperly promulgated and that the printer policy violated his rights to due process, equal protection, and rehabilitation. Mathis also claimed that the SOP denied him access to the courts.

The parties cross-moved for summary judgment, and the superior court granted judgment for Sauser and Kincheloe. Mathis appeals from this judgment.

### III. *DISCUSSION*

#### A. *Standard of Review*

 This court reviews an award of summary judgment *de novo*. *Farmer v. State*, 788 P.2d 43, 46 n. 8 (Alaska 1990). "[S]ummary judgment is affirmed if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1086 (Alaska 1989). In determining whether there is any genuine issue of material fact, the court must view the facts in the light most favorable to the non-moving party. *Willner's Fuel Distributors, Inc. v. Noreen*, 882 P.2d 399, 403 n. 7 (Alaska 1994).

 In deciding questions of law, this court applies its independent judgment and adopts the rule of law that is most persuasive in light of precedent, reason and policy. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

#### B. *Right of Access to the Courts*

Mathis asserts that the SOP violates the Alaska Constitution because it curtails inmates' access to the courts. The question before us is not whether Mathis possesses a constitutional right to have a printer in his cell.[4] Rather, we must determine whether Mathis, under Alaska's constitution, has a constitutionally protected interest in not being deprived of his printer if the rationale behind such deprivation is to restrict his right of access to the courts. Our inquiry is framed by the record in this case, which suggests that the SOP may have been promulgated to address the "problem" of pro se litigation on the part of SCCC inmates.

 We start from the proposition that "an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. All other rights ... are illusory without it." *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir.1973).[5] This right of access

---

able for the legal needs of inmates is limited to typewriters.

**4.** Though this court has not specifically addressed how typewriters and computers relate to an inmate's right of access to the court system, several state and federal courts have considered the issue and held that an inmate has no constitutional right to possess a typewriter or computer in his cell. *See Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir.1994) (no constitutional right to memory typewriter); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989) (disallowing challenge to prison prohibition on memory typewriters unless "actual injury" alleged); *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir.1989) (upholding prison policy prohibiting use of personal typewriters in library; "no constitutional right to the use of a typewriter"); *American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir.1988) (no constitutional right of access to typewriter), *cert. denied*, 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988); *Twyman v. Crisp*, 584 F.2d 352, 358

(10th Cir.1978) (no protected right to use typewriter); *Wolfish v. Levi*, 573 F.2d 118, 132 (2d Cir.1978) (no constitutional right to typewriters), *rev'd on other grounds*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Eisenhardt v. Britton*, 478 F.2d 855 (5th Cir.1973) (same); *Knight v. Superior Court*, 161 Ariz. 551, 779 P.2d 1290, 1295–96 (App.1989) (noting that while State must supply prisoner with materials to prepare legal papers, need not supply typewriter); *People v. Marlowe*, 167 A.D.2d 692, 563 N.Y.S.2d 272, 273–74 (1990) (prisoner not entitled to have typewriter provided), *appeal denied*, 77 N.Y.2d 963, 570 N.Y.S.2d 497, 573 N.E.2d 585 (1991).

**5.** *See McCarthy v. Madigan*, 503 U.S. 140, 153, 112 S.Ct. 1081, 1090–91, 117 L.Ed.2d 291 (1992) (right to file a court action is fundamental because it is preservative of all rights).

It has been said that rights without remedies are no rights at all. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949).

was first vindicated by the United States Supreme Court in *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). At issue in that case was a regulation promulgated by Michigan prison officials requiring that inmates submit all legal documents for approval to the prison's institutional welfare office and then to the parole board's legal investigator. The Supreme Court held the regulation invalid, noting that the propriety of legal materials is for a "court *alone* to determine." *Id.* at 549, 61 S.Ct. at 642 (emphasis added). *Ex parte Hull* essentially established the principle that prison officials cannot position themselves as "gatekeepers" for the courts.

This principle endures today. Subsequent decisions of the Supreme Court of the United States have expanded the reach of *Ex parte Hull*, focusing on an inmate's constitutional right to be free from state interference with his access to the court system. Over the decades the Supreme Court has repeatedly invalidated regulations which prohibited inmates from advising or assisting one another in the preparation of habeas corpus petitions and civil rights complaints. *See, e.g., Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[6]

An inmate's right to be free of state interference with his right of access to the court system is not absolute. Under certain circumstances, a prison policy which is grounded in a legitimate penological objective will incidentally restrict court access. Where the purpose of the regulation is permissible and there is a reasonable relationship between the policy goal and the ends chosen to achieve it, courts will generally defer to the judgment of prison officials.[7]

Despite judicial respect for the very real problems of prison administration that exist, correctional officials are nonetheless required to advance a legitimate penological interest to justify any policy that may have the effect of impairing access to courts. *See, e.g., Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 104 (6th Cir.1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1682, 118 L.Ed.2d 398 (1992); *Brewer v. Wilkinson*, 3 F.3d 816, 824–25 (5th Cir. 1993). In cases where the burden on access is particularly onerous, a more heightened level of scrutiny is appropriate. Thus, the more drastically a given prison policy or action restricts access to the courts, the more compelling must be the administrative justification for its enactment.[8]

■ As we have suggested, when a challenged regulation curtails an inmate's right of access, a reviewing court must determine that the given policy rationale is legitimate

---

**6.** Another line of Supreme Court cases in this area has elaborated on the State's affirmative obligation to make an inmate's constitutional right of access "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977) (requiring states to provide inmates with adequate law libraries or assistance from persons trained in the law). *See also Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (invalidating rules requiring indigent criminal defendants to pay for trial transcripts or fees necessary to have appeals or habeas petitions heard); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (requiring states to provide assistance of counsel on appeal as of right for all indigent criminal defendants).

We need not address here the scope of a State's affirmative duty to ensure meaningful access to the courts since Mathis's appeal implicates the right to be free of State abridgment of this fundamental right.

**7.** The Supreme Court held in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), that a prison regulation impinging on

inmates' constitutional rights is nonetheless valid "if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The *Turner* court justified such a deferential standard as necessary

> if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." Subjecting the day-to-day judgments of prison officials to an inflexible strict-scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.

*Id.* (citation omitted).

**8.** We have adopted conceptually similar approaches to constitutional challenges in the equal protection and due process contexts. *See, e.g., Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 397 (Alaska 1994); *State v. Anthony*, 810 P.2d 155, 158 (Alaska 1991).

and that there is a sufficiently close relationship between this articulated rationale and the selected means of achieving it. The court must further ascertain that the stated purpose behind the regulation is not a subterfuge for any impermissible motive on the part of those responsible for its enactment. It is to this issue of motive that we now turn.

It has been observed that "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and Section 1983 are intended to remedy." *Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987). The relevance of intent was similarly recognized in *Harris v. Ostrout*, 65 F.3d 912 (11th Cir.1995), where the court noted that

> the First Amendment grants prisoners a limited right of access to the courts. The state may not burden this right with practices that are not reasonably related to legitimate penological objectives, *nor act with the intent of chilling that First Amendment right.*

*Id.* at 916 (citations omitted, emphasis added). These holdings may be viewed as elaborations on the fundamental principle established in *Ex parte Hull* that a state and its officers may not usurp the court's function by pre-judging in any way the merits of an inmate's legal claims.

■ Thus, even when state officials deem a prisoner's pro se legal activities frivolous, the Constitution of Alaska precludes any action aimed at impeding an inmate's access to the courts. Here our study of the record reveals the distinct likelihood that interfering with inmates' access to the courts was a primary motivation behind the SOP restriction on computer printers. In a sworn affidavit, Deputy Director Cooper admitted that one of the problems that the regulation in question was intended to address was the fact that

> prisoners have been utilizing computers to harass prison officials at Spring Creek with frivolous litigation and paperwork. Computer generated form pleadings with a "fill in the blank" format are widespread and facilitate the filing of meritless legal

cases which results in the waste of significant staff time.

Significantly, the Attorney General's Office placed its imprimatur on this legally impermissible justification by adopting the rationale in its briefing before this court.

The policy which Mathis challenges here presents, under the circumstances, an extremely low level threat to the effectiveness of his access to the courts. No credible argument could be made that having a computer printer present in every cell is necessary to provide reasonable access to the courts. As such, virtually any legitimate penological justification for the policy would suffice.

Our conclusion respects important distinctions between the functions of the executive and the judicial branches of our government. Just as this court does not interfere in the decisionmaking processes of correctional institutions seeking to achieve legitimate penological goals, we cannot accept the prison administration's determination that "frivolous" and "meritless" inmate litigation must be curtailed, for these concerns rest primarily with the judiciary.

We are cognizant of the "actual injury" requirement adopted by various federal circuit courts[9] and, recently, the United States Supreme Court. *Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996). These decisions require that inmates who allege that inadequate prison facilities limit their access to the courts must demonstrate that they have somehow been prejudiced by these shortcomings. Thus, *Lewis* holds:

> It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular

---

**9.** *See, e.g., Sands v. Lewis*, 886 F.2d 1166, 1169– 71 (9th Cir.1989).

individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. *Id.,* —— U.S. at ——, 116 S.Ct. at 2179 135 L.Ed.2d at 617.

We conclude that the case before us is unaffected by the holding of *Lewis* and we decline to impose an "actual injury" requirement on Mathis. He need only show that the challenged policy was motivated by an intent to curtail access to the courts. At issue here is not an allegation that SCCC is providing inmates with insufficient tools to ensure meaningful access to courts, thereby implicating the State's affirmative duties in this regard.[10] Rather, it is Mathis's claim of intentional administrative obstruction, of "past or imminent official interference with individual inmates' presentation of claims to the courts," *id.,* which lies at the heart of this appeal.

■ The record before us demonstrates the existence of a genuine issue of material fact as to the constitutionality of the policy in question. Once the State has acknowledged that it intended to interfere with inmates' access to the courts, all other supplementary justifications should be carefully scrutinized for legitimacy.[11] Unless the challenged policy is supported by a valid penological interest, it must be held invalid. We therefore reverse the superior court's grant of summary judgment against Mathis on his right of access claim under Alaska's constitution, and remand for further proceedings consistent with this opinion.

We now turn to the remainder of Mathis's challenges.

### C. *Promulgation of the SOP*

■ Mathis alleges that the SOP was improperly promulgated. We disagree.

■ In 1990 the Commissioner of the DOC established a policy dealing with standard operating procedures.[12] This document provided that "[e]ach facility shall develop and maintain the SOPs necessary to implement department policies," and stated that "[n]o SOP may be implemented prior to director approval."[13]

The SOP at issue here was developed by SCCC and approved by Sauser. Accordingly, we conclude that the policy was properly promulgated. The superior court's resolution of this issue is therefore affirmed.

### D. *Equal Protection of Law*

■ Though he challenges the DOC policy on equal protection grounds, Mathis has produced no evidence of discrimination. In his amended complaint he alleges that inmates at other institutions have been allowed to keep their printers. There is no evidence to support this contention, however, or to suggest that prisoners at other institutions are similarly situated for purposes of equal protection analysis. Indeed, each DOC facility must formulate policies consistent with its particular mission and security needs. Inmates at SCCC can legitimately be treated differently than inmates at other institutions provided that such treatment is rationally related to legitimate DOC objectives. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Coakley v. Murphy,* 884 F.2d 1218, 1222 (9th Cir.1989).

10. *See Sands,* 886 F.2d at 1171 (holding that prejudice or actual injury is not required when dealing with the "core requirements under *Bounds* "); *Peterkin v. Jeffes,* 855 F.2d 1021, 1041 (3d Cir.1988) (The reasoning behind the actual injury requirement is that "not every item ... capable of being linked to a state's provision of legal assistance to prisoners automatically implicates the constitutional right of access to the courts.").

11. More particularly, once the institution admits that the policy in question was intended to interfere with inmates' access to the courts, a reviewing court's posture shifts. The trial court must be satisfied that the proffered interests are con-

stitutionally valid, and that these interests indeed motivated the prison administration to promulgate its policy.

12. The Commissioner is granted the power to carry out the duties of the DOC and to adopt regulations implementing Chapter 30, Title 33 of the Alaska statutes. AS 44.28.030, AS 33.30.021.

13. Policies and procedures of state agencies need not conform to formal requirements of the Administrative Procedure Act. *Messerli v. Dep't of Natural Resources,* 768 P.2d 1112, 1117–18 (Alaska 1989).

■ Mathis also alleges that similarly situated inmates at SCCC are being treated differently. Selective enforcement of a statute, regulation or policy violates the equal protection clause if it is part of a deliberate and intentional plan to discriminate based on an arbitrary or unjustifiable classification. *Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1040 (Alaska 1989), *cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). Mathis has produced no evidence of any such impermissible selective enforcement on the part of prison officials.[14]

The superior court's award of summary judgment on the equal protection claims is therefore affirmed.

### E. *Right to Rehabilitation*

■ Mathis correctly asserts that he has an interest in being rehabilitated. *See Ferguson v. State Dep't of Corrections*, 816 P.2d 134, 139 (Alaska 1991) ("[P]risoners have an enforceable interest in continued participation in rehabilitation programs."). However, he has not argued that he is involved in any rehabilitative program requiring the use of a printer in his cell. Nor has Mathis produced any evidence to support the proposition that the policy in question implicates his rehabilitation. The superior court's award of summary judgment on this issue was therefore proper.

### F. *Mathis's Motions for Discovery* [15]

■ Mathis argues that he was denied adequate discovery. The parties agree that the response to Mathis's repeated discovery requests was that the documents he requested

> are available for copying and inspection at Spring Creek Correctional Center. Copies will be made at plaintiff's expense and upon payment in advance. Plaintiff should contact his institutional probation officer to

make arrangement to review such documents.

■ Mathis was apparently allowed to inspect the documents without charge. If he declined to pursue any inspection, he has in essence waived this issue. If he inspected the documents but did not copy them, he has neither provided explanation of why he could not make the necessary copies nor indicated the importance of any particular document. Moreover, since Sauser and Kincheloe are entitled to judgment as a matter of law on all Mathis's claims but one, any evidence Mathis might have obtained related to these claims would not have changed the outcome of his case. We cannot conclude that the lack of discovery prejudiced Mathis's prosecution of these claims.

On remand Mathis should be given a reasonable opportunity to pursue discovery of the factual issues relevant to his right of access challenge.

### G. *Sauser and Kincheloe's Entitlement to Qualified Immunity*

Given our disposition of Mathis's right of access claim, we address Sauser and Kincheloe's assertion that they are entitled to qualified immunity from civil damages.

■ Government officials performing discretionary functions enjoy qualified immunity from civil damages if their conduct does not violate "clearly established" constitutional rights of which a reasonable person would have known at the time the alleged violation occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir.1989). In determining whether qualified immunity exists, the relevant inquiry is whether a reasonable official could have believed the challenged conduct was lawful in light of clearly established law and the facts of the case. *Anderson v.*

---

**14.** Mathis claims that because he needed prior approval from prison officials before he could have his computer printer sent to him at the institution, a protected interest in the printer was created. This argument is devoid of merit.

We additionally note that Mathis's proprietary interest in his printer survived the SOP directive, since despite the property policy he retained the

power to disburse his printer outside SCCC. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

**15.** We review a superior court's rulings on discovery for an abuse of discretion. *Gunnerud v. State*, 611 P.2d 69, 72–73 (Alaska 1980).

*Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). More specifically, Justice Scalia, writing for the Court in *Anderson,* said:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citation omitted).

 Regarding Mathis's claims for civil damages based on violation of the right of access to the courts, we hold that Sauser and Kincheloe are entitled to the protection of qualified immunity under the *Anderson v. Creighton* test.[16] Our holding is based on the recognition that federal and state courts had, at the time the 1993 SOP was promulgated, upheld rules intended to make access to the courts more difficult.[17] In short, the contours of the right of access to the courts implicated here had not been clearly established to the degree that a reasonable official would have understood that what he did violated that right.[18]

## IV. CONCLUSION

We AFFIRM the superior court's grant of summary judgment to Sauser and Kincheloe on all of Mathis's claims with the exception of the denial of his right to access to the courts claim. As to this claim, the superior court's entry of summary judgment is REVERSED and the declaratory and injunctive relief aspects of Mathis's claim are REMANDED to the superior court for further proceedings not inconsistent with this opinion.

FABE, J., not participating.

EASTAUGH, Justice, with whom COMPTON, Chief Justice, joins, dissenting in part.

Although I agree with the remainder of the court's opinion, I disagree with Part III. B's description and resolution of Mathis's right of access claim. In my view, an inmate has no constitutional right to have an in-cell printer. He must demonstrate injury to establish standing to challenge an executive branch corrections policy that allegedly denies him access to the courts.

## I. STANDING

The court declines, op. at 1123, to follow the United States Supreme Court's latest inmate access case, *Lewis v. Casey,* — U.S. —, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The Court there held that inmates at a prison facility must show actual injury in order to bring a denial of access claim. *Id.* at —, 116 S.Ct. at 2179. The Court explained that an inmate must show that the alleged shortcomings in the prison facilities "hindered his efforts to pursue a legal claim." *Id.* at —, 116 S.Ct. at 2180.

This requirement derives from the doctrine of standing, which prevents courts from interfering with the political branches of government. *Id.* at —, 116 S.Ct. at 2179.

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the politi-

---

16. Based on our disposition of the issues in this appeal, Mathis's right of access challenge is his only surviving claim. Qualified immunity is not available in connection with Mathis's claims for declaratory and injunctive relief.

17. See authorities cited in note 4, *supra.*

18. We have concluded that it is unnecessary to address any remaining issues in this appeal given the holdings of this opinion.

cal branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If—to take another example from prison life—a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

*Id.*

This court now approves judicial interference with a Standard Operating Procedure (SOP) that defines "the proper and necessary steps required to account and process an inmate's property," including the permissible items of personal property in possession and property transfers. This seems to be an unwarranted and unwise judicial interference with basic prison policy, which should be avoided absent a demonstration of impairment of a constitutional right.[1] *See Lewis*, —— U.S. at ——, 116 S.Ct. at 2179; *see also id.* at ——, —— – ——, 116 S.Ct. at 2186, 2196–2200 (Thomas, J., concurring) ("State

prisons should be run by the state officials with the expertise and the primary authority for running such institutions.").

Although our standing doctrine is arguably less rigorous than the corresponding federal doctrine, our opinions express the same sort of concerns discussed in *Lewis* concerning judicial restraint and advisory opinions. *See Bowers Office Prods., Inc. v. University of Alaska*, 755 P.2d 1095, 1097 (Alaska 1988) (Standing "is based on the principle that courts should not resolve abstract questions or issue advisory opinions."); *Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 475 (Alaska 1977) (Standing in Alaska "is essentially a judicial rule of self-restraint."). A " 'party asserting standing [must demonstrate] a sufficient 'personal stake' in the outcome of the controversy to ensure the requisite adversity.' " *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 525 (Alaska 1993) (citation omitted). In *Municipality of Anchorage v. Leigh*, 823 P.2d 1241, 1245 (Alaska 1992), this court decided that a statute was not unconstitutional as applied to *Leigh*, and declined to consider whether it might be unconstitutional when applied to a hypothetical claimant. We stated: "The United States Supreme Court summarized the rule well. 'A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.' " *Id.* at 1245 n. 11 (quoting with approval *County Court of Ulster v. Allen*, 442 U.S. 140, 154–55, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979)).

Some measure of this court's past concern about judicial review of prisoner disputes is reflected in opinions holding that the superior court lacks appellate jurisdiction over a wide range of inmate claims. *See, e.g., Hays v. State*, 830 P.2d 783, 784 (Alaska 1992) ("[T]he superior court does not ordinarily have jurisdiction over appeals from prison grievance proceedings" absent issues of "con-

---

**1.** Once courts decide whether DOC may preclude in-cell printers, it seems likely they will have to decide related technical issues. The same rationale that covers a printer would seem to apply to a CD–ROM drive and a disk with Alaska's reported cases. The court's theory, that an illegitimate prison policy impairing court access requires further inquiry, would encompass claims that the

prison has denied access to the latest word processor program, a larger hard drive, greater random access memory, and so on. A prison policy that limits prisoner in-cell access to laptop size computers, if pretextual, can be translated into a constitutional right to have a full size, desktop machine that is easier to use.

stitutional magnitude."); *McGinnis v. Stevens,* 543 P.2d 1221, 1236 & n. 45 (Alaska 1975) ("[A] right to an automatic appeal" is not "a matter of due process, required by Alaska's constitution," but "[i]f fundamental constitutional rights are alleged to be abridged in disciplinary proceedings, it would be the duty of the court to inquire into the allegations."). *See also Brandon v. State, Dep't of Corrections,* 938 P.2d 1029, 1032 (Alaska 1997) (holding that the superior court had jurisdiction to hear an administrative appeal of a DOC action involving an alleged substantial impairment of a "fundamental constitutional right," Brandon's right to rehabilitation).

This court has not abandoned a requirement of injury to establish standing to challenge DOC's policies. In *Hays,* the inmate claimed that his disciplinary dismissal from a prison employment program denied him his constitutionally protected right to participate in rehabilitation programs. In deciding that there was no subject matter jurisdiction over Hays's appeal, because there was no issue of constitutional magnitude, the court found it important that Hays "was not denied all rehabilitative opportunities." 830 P.2d at 785. The court thus looked at whether the discipline actually violated Hays's right to rehabilitation.[2]

In this case, Mathis has not suffered any actual or imminent harm. His computer printer was seized in November 1993. His subsequent filings in state court have been legible and typewritten. Moreover, his appeal briefs have satisfied the appellate rules and were typewritten. *See* Alaska R.App. P. 212, 513.5. His opening brief was twenty-seven pages and cited forty cases. Mathis was involved in another lawsuit, but he has not shown that the SOP harmed him in that case. The court seems to recognize that the SOP has not actually impaired Mathis's access right:

> The policy which Mathis challenges here presents, under the circumstances, an extremely low level threat to the effective-

ness of his access to the courts. No credible argument could be made that having a computer printer present in every cell is necessary to provide reasonable access to the courts.

Op. at 1122.

The court declines to follow *Lewis,* op. at 1123, and does not explain how Alaska's own iteration of the standing principle has been satisfied. It apparently concludes that an invalid basis for the restriction (a desire to chill "meritless" prisoner litigation) is so offensive, requiring close scrutiny of "all other supplementary justifications" for the policy, that no actual injury is required for standing. Op. at 1123. In my view, this illegitimacy of purpose would render the absence of actual impairment irrelevant only if there were a constitutional right to have an in-cell printer. *See infra* Section II. If there is no such right, traditional notions of standing should preclude Mathis's judicial attack on this executive branch policy.

Absent some justification for adopting a more protective substantive standard for resolving issues of inmate rights of access, I would hold that Mathis does not have standing to attack the SOP for the policy reasons discussed in *Lewis.*

## II. *RIGHT TO PRINTER IN CELL*

Although the court states that the question is not whether Mathis has a constitutional right to an in-cell printer, op. at 1120, 1122, I think the issue as described by the court inevitably implicates that question. The court states that we must instead determine whether Mathis "has a constitutionally protected interest in not being deprived of his printer if the rationale behind such deprivation is to restrict his right of access to the courts." Op. at 1120. According to the court, "unless the challenged policy is supported by a valid penological interest, it must be held invalid." Op. at 1123.

There is no question that Mathis has a constitutionally protected right of access to

---

**2.** I do not mean to suggest that factors which determine whether a prisoner has standing to appeal from prison grievance proceedings necessarily also determine whether a prisoner has standing to attack prison procedures which have not resulted in imposition of discipline against the prisoner.

the courts.[3] *See, e.g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The broad question presented is whether the SOP has impaired that right. Absent any showing that Mathis's access right has been materially impaired, the court's holding also necessarily assumes that Mathis has a constitutional right to have a printer in his cell. Apparently the court assumes that, if the SOP is not vindicated following a fact hearing on remand, Mathis's printer will be returned to him for reinstallation in his cell.

I think the legitimacy of DOC's purpose is irrelevant unless and until Mathis shows that his access has been impaired. He has no constitutionally protected interest in adjudicating the validity of a policy that does not harm him. Any genuine fact dispute about whether there is a valid penological purpose behind the SOP is not yet material. Resolving that dispute will materially improve or restore Mathis's protected right of access only if a court also determines that Mathis has not otherwise been provided adequate facilities and opportunities. If the SOP did not in fact materially impair Mathis's right of access, I do not see why our courts should resolve an immaterial fact dispute, however genuine it may be. Such a practice wastes judicial resources. More importantly, it encourages needless judicial interference with the affairs of another branch of state government. *See Lewis,* —— U.S. at ——, —— ——, 116 S.Ct. at 2186, 2196–2200 (Thomas, J., concurring). I say "needless" because if the SOP does not in fact prevent Mathis from adequately addressing the courts, holding that it is invalid becomes a purely advisory exercise of judicial power.[4]

Moreover, a narrow inquiry into the validity of the SOP fails to address the fundamental question: whether DOC has materially impaired access rights. That question cannot be answered without considering what other access facilities and opportunities DOC provides. Even if the SOP had an unarguably valid purpose, depriving prisoners of in-cell printers would in fact deprive them of access unless alternative adequate facilities and opportunities are available. Since the real question here is access, and not purpose, nothing useful is to be gained by remanding in the absence of any genuine dispute about whether Mathis's access has in fact been impaired.

Thus the question posed by the court necessarily presupposes that there can be a constitutional right to have a printer in a cell, regardless of what other access opportunities the prison provides. Before we can remand for resolution of a constitutional issue in the absence of any demonstration of injury, we must first decide whether the constitution entitles Mathis to an in-cell printer. *See Vigliotto v. Terry,* 865 F.2d 1131, 1133 (9th Cir.1989) (temporary deprivation of legal materials does not rise to a constitutional deprivation).

We should resolve this narrow legal issue by holding that Mathis does not have a constitutional right to a printer in his cell, and thus that the SOP does not violate the Alaska Constitution. Although reported Alaska cases have not examined how typewriters and computers relate to a prisoner's right of access to the courts, state and federal courts have considered similar issues. The court's opinion has collected representative cases. Op. at 1120 n. 4. They make it clear that a prisoner has no right to have a typewriter or word processor in his or her cell. *See, e.g., Taylor v. Coughlin,* 29 F.3d 39, 40 (2d Cir. 1994) (no constitutional right to memory typewriter); *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989) (disallowing challenge to prison prohibition on memory typewriters

**3.** No Alaska case has addressed an inmate's right of access to the courts. *Cf. Freitag v. Gohr,* 651 P.2d 356 (Alaska 1982) (order denying petition for review) (no right to untimely appeal); *Bush v. Reid,* 516 P.2d 1215 (Alaska 1973) (parolee has right to institute civil suit).

**4.** It is interesting to contemplate the possible effect of the court's opinion today and what happens if on remand the trial court determines the "supplementary justifications" are illegiti-

mate because they did not motivate promulgation of the SOP. One must assume that DOC will then realize that chilling inmates' right of access is an invalid basis for the SOP, will jettison the improper rationale, and will repromulgate the SOP supported exclusively by proper grounds. Such a course of events illustrates why a demonstration of impaired access should be required before the judiciary interferes with executive policies.

unless "actual injury" alleged); *Jackson v. State*, 885 F.2d 639, 641 (9th Cir.1989) (upholding prison policy prohibiting use of personal typewriters in library; "no constitutional right to the use of a typewriter"). I would follow that authority and hold that Mathis has no right to have an in-cell printer.

SCCC provides typewriters in the law library and computers in the education department for prisoners' use. Since pleadings and briefs need not be typewritten in Alaska, Mathis has no absolute need for a typewriter or a printer at all, let alone one in his cell. *See* Alaska R. Civ. P. 76(h) (the rule does not explicitly allow handwritten documents, but the judge may depart from the rule in cases of emergency or necessity); Alaska R.App. P. 513.5(b)(2).

We need not examine the justifications behind the prison SOP, because a policy restricting computer printers in an inmate's cell does not violate the inmate's constitutional right of access. *See Taylor*, 29 F.3d at 40 (not necessary to consider justifications of prison policy because no constitutional rights infringed).

### III. *LEGITIMACY OF PENOLOGICAL INTERESTS*

The existence of ostensibly legitimate reasons for the SOP should be irrelevant, because Mathis has not demonstrated any actual impairment. I nonetheless feel compelled to mention DOC's reasons both to correct any impression derived from the court's opinion that these are merely "supplementary" or patently pretextual justifications, and to confirm why we should not dispense here with a demonstration of actual impairment before we require an unrewarding judicial inquiry into DOC's intentions. DOC's remaining reasons for the SOP are set out in the affidavit of Allen Cooper, DOC's Deputy Director of Institutions:

We intend to prohibit computers and other electronic equipment such as word processors and memory typewriters for a variety of reasons. First, prisoner possession of computer equipment leads to significant administrative problems. The equipment takes up too much space in prisoners cells particularly if the cell is occupied by two

prisoners. Special consideration would be required to make sure that prisoners with electronic equipment would not be bunked together which would create significant administrative problems. Similarly, the possession of full-size computer equipment makes it difficult and expensive to transport prisoners and this equipment between institutions. Issues arise as to how permanent a transfer has to be to warrant transporting the computer equipment to a new facility. The equipment is also at great risk to be damaged if transported. If not transported, the equipment would have to be stored.

Prisoner possession of computer equipment also jeopardizes facility security. Prisoners can use their computers and word processing equipment to sell legal work which ultimately leads to the disruption of the orderly operation of DOC facilities. Prisoners who produce legal work can use this leverage to exert control over fellow prisoners who are in need of legal work. Finally, prisoners have been utilizing computers to harass prison officials at Spring Creek with frivolous litigation and paperwork. Computer generated form pleadings with a "fill in the blank" format are widespread and facilitate the filing of meritless legal cases which results in the waste of significant staff time.

DOC's most compelling justification was concern with the size and amount of property that inmates kept in their cells. The SOP restrictions on inmate property are consistent with this goal:

The size of the boombox will be no larger than will fit in a normal property box

. . . .

b. Televisions will be limited to a 13–inch screen. Video Cassette Recorders (VCRs) are not allowed.

c. Inmates will be allowed to have one (1) computer of the "lap-top" type. The computer shall be no larger than 12″ × 15″ and will be of a size that can fit into a property transfer box. . . .

d. Wind or percussion instruments will not be allowed, with the exception of one (1) harmonica per inmate.

e. Live plants will be limited in the housing unit to one (1) plant per inmate; the plant will be no taller than twenty-five (25) inches and will be potted in a pot no larger than six-inch (6″).

The record memoranda implementing the property SOP are also consistent with a goal of reducing the amount of property in a cell.

Applying the court's "sliding scale" of scrutiny, and absent any showing that Mathis's access to the courts was impaired, I would hold that legitimate penological interests justify the SOP. I would therefore affirm the grant of summary judgment against Mathis on the right of access issue.